### JANE O'MEARA *vs.* COLUMBIAN NATIONAL LIFE INSURANCE COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 6th—decided April 3d, 1935.

*William Reeves,* for the appellant (defendant).

*John Henry Sheehan,* for the appellee (plaintiff).

AVERY, J. The plaintiff, Jane O'Meara, was the beneficiary named in a life insurance policy issued by

the defendant, Columbian National Life Insurance Company, upon the life of John T. Scully in the amount of $1000, with an additional indemnity provision that upon receipt of proof that the death of the insured occurred as a direct result of bodily injuries effected directly and independently of all other causes through external, violent and accidental means within ninety days from the date of the injury, and of which there is a visible contusion or wound upon the exterior of the body, the defendant will pay to the beneficiary $1000 in addition to the face amount of the policy, it being mutually agreed that this additional indemnity benefit will not apply if the assured's death results from physical or mental infirmity or directly or indirectly from illness or disease of any kind. The defendant offered to pay the face amount of the policy and the matter in controversy was whether or not the death of the insured resulted wholly from accidental causes within the terms of the policy so as to entitle the plaintiff, as beneficiary, to the additional benefit. The case was tried to the jury and a verdict returned in favor of the plaintiff, from which the defendant has appealed, assigning error in the denial by the trial court of the defendant's motion to set aside the verdict; also in the refusal of the court to instruct the jury as requested, in the charge as delivered, and certain rulings upon evidence.

Viewing the evidence in the light most favorable to the plaintiff, the jury might reasonably have found that the assured, John T. Scully, a man weighing about two hundred pounds, forty-seven years of age, and a butcher by occupation, lived with his sister-in-law on North State Street in Ansonia. On Sunday, January 21st, 1934, the plaintiff had been with Mr. Scully most of the day until about six o'clock in the evening. He appeared to be in good health, and they had eaten a

good dinner together in the afternoon. After leaving the plaintiff in the early evening, he went to a restaurant on North State Street, operated by a Mr. Jenkins, about seven hundred feet southeast of the laneway leading to the rear of his house. He played cards with Jenkins all evening and ate with him at about 3 a.m. on Monday, January 22d. He did not drink any liquor during this period. About 3.30, Scully left and was next seen by a police officer, Shea, entering the laneway south of his house. This was at about 3.40 a.m. Officer Shea observed that Scully staggered as he walked into the driveway. About thirty-five or forty minutes later, Officer Shea was proceeding north on North Main Street in his automobile when he found Scully lying on the dirt sidewalk on North Main Street at a point about midway from the corner of North State and North Main Streets and the steps of the house located on the latter street. This place was across a vacant lot from the end of the lane and the rear of the house where he lived. The officer observed that Scully was unconscious and had an abrasion over his left eye. He called an ambulance and summoned Dr. O'Neil of Ansonia who came and immediately had Scully taken to the Derby Hospital. Upon arrival at the hospital, in the accident room, the patient being unconscious and having a contusion and laceration over the left eye, an entry was made in the hospital record "Admission Diagnosis"—"fractured skull." X-ray pictures were taken but showed no fracture. Dr. O'Neil treated the patient and ordered a urine analysis and blood test. These tests showed a high percentage of sugar and the existence of sugar, acid and casts in the urine, indicating a diabetic condition. The examination also disclosed that Scully was suffering from bronchitis, nephritis and chronic gout. Dr. O'Neil prescribed the administration of insulin, and some time in the after-

noon of the following day, Scully recovered consciousness. His general condition, however, grew worse and it was discovered that he was suffering from lobar pneumonia, of which he died upon the following day. Scully had been a sufferer from diabetes for several years.

To recover under the terms of the policy, the burden rested upon the plaintiff to show that the sole proximate cause of the death was an accident. If bodily disease, independent of an accidental injury, combined therewith and contributed to produce it, no liability exists. *Stanton* v. *Travelers Ins. Co.*, 83 Conn. 708, 710, 78 Atl. 317; *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 424, 172 Atl. 777. The claim of the plaintiff is that Scully died of lobar pneumonia brought about by the exposure resulting from his falling from the top of the wall to the sidewalk and lying there for some time thereafter. The case of the plaintiff rests upon a succession of inferences: (1) That there was a fall caused by accident and not by disease; (2) that by reason of the fall, Scully was rendered unconscious and exposed upon the ground on a January morning for the better part of an hour; and (3) that from the exposure pneumonia was caused to set in whereby he died and that, therefore, the accident was the sole proximate cause of his death.

When found by Officer Shea, Scully was lying on the sidewalk parallel with the side of the lot with his head toward the street corner. There was evidence that the hedge at the top of the wall appeared as though something had broken through it; and, from the evidence, the jury might reasonably have concluded that the deceased fell through the hedge and from the wall, and did not fall while walking along the sidewalk. There was, however, an entire absence of any testimony tending to show that his unconscious condition was due to

the injury which he had received in falling or that the injury was of such a character as would tend to produce unconsciousness. The effects upon the human system of diseases or injuries such as are here involved are not within the sphere of common knowledge. To understand such matters, the testimony of witnesses possessing special knowledge and skill in the sciences of medicine and surgery is required. Whether the injuries were of such character as in reasonable probability would have caused his unconsciousness presented a medical question requiring the testimony of men skilled in that profession. It was not permissible for the jury of laymen without such expert testimony to speculate as to the cause of his unconscious condition. *Green* v. *Stone,* 119 Conn. 300, 306, 176 Atl. 123; *Bates* v. *Carroll,* 99 Conn. 677, 679, 122 Atl. 562; *Slimak* v. *Foster,* 106 Conn. 366, 368, 138 Atl. 153; *Quackenbush* v. *Vallario,* 114 Conn. 652, 657, 159 Atl. 893; *Capolupo* v. *Wills,* 116 Conn. 13, 17, 163 Atl. 454; *Witkowski* v. *Goldberg,* 115 Conn. 693, 696, 163 Atl. 413. The only medical testimony bearing upon his unconscious condition was that of his attending physician, who declined to venture an opinion as to how it was caused, and the testimony of Dr. Blumer, an expert diagnostician called by the defense, who stated that in his opinion the unconscious condition of Scully was a diabetic coma caused by the disease with which he was suffering, and in no way attributable to the injury to his head. Upon the evidence, the jury could not reasonably reach the conclusion that Scully's unconsciousness was the result of the fall, and as his exposure thereafter was undoubtedly due to that unconsciousness, there was lacking a necessary link in the chain of proof of the plaintiff's case.

With respect to the cause of death also, the evidence is insufficient to sustain a verdict in favor of the plain-

tiff. The medical examiner who certified as to the cause of death stated in his certificate that a contributing cause was diabetes. Dr. O'Neil, the attending physician, did not express an opinion that the accidental injury was the sole cause of death but, on the contrary, stated that the diseases from which Scully was suffering were contributing causes; while Dr. Blumer testified unequivocally that diabetes was a contributing cause. From the testimony offered, reasonable men could not draw the conclusion that accidental injury was the sole proximate cause of the death of the deceased.

It follows that the verdict was without evidential support to sustain it and the trial court should have set it aside. It is unnecessary to discuss the other assignments of error.

There is error, the verdict is set aside and a new trial is ordered.

In this opinion the other judges concurred.