ROBERT D. COLLETTE *v.* JOAN C. COLLETTE

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued February 13—decision released May 8, 1979

*James P. Caulfield,* with whom, on the brief, was *Gary L. Broder,* for the appellant (plaintiff).

*Gary G. Williams,* with whom, on the brief, was *Arnold M. Potash,* for the appellee (defendant).

LONGO, J. A state referee, exercising the powers of the Superior Court, rendered a judgment dissolving, on the ground of irretrievable breakdown, the marriage between the plaintiff and the defendant, awarded custody of the parties' three minor children to the defendant, with rights of reasonable visitation to the plaintiff, and ordered that the plaintiff pay to the defendant periodic alimony and support in the combined amount of $225 per week. The referee, in addition, ordered the assignment of the jointly owned family home and its contents to the defendant, and a parcel of real estate in Vermont to the plaintiff. The plaintiff has appealed from the judgment rendered relating to the alimony and support orders and from the award to the defendant of the plaintiff's interest in the jointly owned family home located in Middlebury, Connecticut.

In his assignment of errors, the plaintiff has attacked thirty-five of the sixty-one paragraphs of the court's finding, alleging the court's failure to include admitted or undisputed facts; the court's finding of facts without evidence; the finding of facts employing language of doubtful meaning; and the reaching of unsupported conclusions. The plaintiff also claims error in the admission of certain evidence of the defendant expressing her opinion as to the cause of a miscarriage. His basic contentions are, however, that the court erred in fixing the amount of alimony and support, and in awarding the family home to the defendant. The finding is not, despite the plaintiff's broadside attack, subject

to material correction. In the course of our opinion, we shall make reference to those facts which the appendices to the briefs of the parties disclose were admitted or undisputed, and make such modifications in the finding as are appropriate to the resolution of the very narrow issues raised.

The finding reveals the following: The plaintiff and the defendant were married on November 24, 1956, and lived together for twenty years during which time they had four children, three of whom were minors at the time of the hearing. The marriage between the plaintiff and the defendant had broken down irretrievably. The plaintiff, thirty-nine years old at the time of the hearing, is seasonally self-employed as a ceramic tile contractor, and earns income of $400 to $500 per week. The nature of the plaintiff's business is such that he is employed regularly during some periods of the year, while at other times his work is less frequent; he works, however, an average of five days per week during the year. The gross receipts for the plaintiff's business for the year 1975 were $52,627 as stated on the income tax returns filed by the parties. The plaintiff's financial affidavit and his testimony at the hearing tended to show that he was in debt for various expenses arising out of his business, and that he had weekly expenses in the approximate amount of $218. In 1976, the plaintiff was also employed part-time as a bartender, from which he made an insubstantial income. Despite his testimony, mentioned above, in regard to the amount of his weekly gross income, the plaintiff listed his weekly net income on his financial affidavit as $173.

The plaintiff left the marital home in January of 1976. From June of 1976 until January, 1977,

the plaintiff paid to the defendant in excess of $200 per week for the maintenance of the home and the support of the minor children. After the middle of 1976, the plaintiff paid to the defendant an average of $225 per week, and approximately $80 per month to cover insurance on the family house and the defendant's car as well as mortgage insurance. The defendant, at the time of the hearing, was thirty-nine years old, unemployed, a high school graduate, possessed previous working experience, and was, alone, rearing the three minor children of the marriage. Her total weekly expenses, as listed on her financial statement, amounted to approximately $365.

At the time of the dissolution, the parties jointly owned their house in Middlebury, Connecticut, valued at between $45,000 and $50,000, and a parcel of land in Wilmington, Vermont. The court ordered the plaintiff to pay $50 a week support for each of the three minor children, $75 a week alimony until the youngest child reached eighteen years of age, and ordered the conveyance of the Middlebury house to the defendant, and the lot in Wilmington, Vermont, to the plaintiff.

The plaintiff contends that the award of alimony and child support was excessive and not warranted in view of the income the plaintiff derived from his business and that the conveyance of the family house to the defendant was improper. He claims that he was compelled to resort to deficit financing in order to meet his obligations to his business and his family, and that the trial court should not have made its award in view of the financial situation of the parties as demonstrated in their financial statements. The plaintiff argues, in a somewhat obscure

fashion, that the trial court improperly based its award on the plaintiff's gross, rather than net, income, and that the court did not take account of all the purported indebtedness of the plaintiff, and the plaintiff's method of "deficit financing" utilized to maintain his business and to support his family. These claims have been analyzed with reference to the record, the court's finding, and the transcripts of the dissolution hearing; with the exception of the evidentiary claim, they are patently without merit and require little discussion.

It cannot be disputed that net income available to the party who is to pay alimony and not gross income is the criterion upon which the court must fix alimony. *Tobey* v. *Tobey,* 165 Conn. 742, 747, 345 A.2d 21 (1974). Nothing in the record, however, indicates that the trial court based its award of alimony upon the plaintiff's gross income. Rather, the record shows that the court made repeated references to the fact that the plaintiff gave his wife more than $225 weekly out of the business while his claimed net income was only $173. Moreover, the court found that after June, 1976, following the parties' separation in January, the plaintiff had given the defendant sums varying from $225 to $289 per week. During most of 1977, he gave his wife $225 weekly, $80 monthly for insurance payments, paid medical bills and sent $25 weekly to the state of Connecticut on behalf of his son. Although the plaintiff testified that he was able to provide his wife with more money than he was earning because of his deficit financing, the court found that only in two years was the plaintiff's business short of money. Faced with the contradictions between the plaintiff's financial statement and income tax return, and his testimony at trial, it is apparent that the

trial court disbelieved the plaintiff's account of his financial situation. There was sufficient evidence to support the court's conclusion that the plaintiff was able to pay the alimony and support ordered in that he paid, for a considerable period of time prior to and following the separation, by agreement, at least the sum of $225 and at times in excess of that amount.[1]

The plaintiff further contends that the court abused its discretion in awarding his interest in the jointly owned family home to the defendant. The rules applicable to the present appeal concerning the assignment of the plaintiff's property to the defendant are fully set forth in *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 584, 362 A.2d 835 (1975). See also General Statutes §§ 46b-81, 46b-82; *Jewell* v. *Jewell,* 176 Conn. 222, 223, 405 A.2d 653 (1978); *Hotkowski* v. *Hotkowski,* 165 Conn. 167, 171, 328 A.2d 674 (1973). No useful purpose would be served by reiterating what was stated in that case. The underlying circumstance confronting the court was the felt necessity to retain the stability of the family home for the defendant and the minor children. The record abundantly demonstrates that the court took into consideration the principles referred to in *Pasquariello,* including the mandates

---

[1] It is worthy of note that although the plaintiff's business was seasonal, nothing in the record indicates that he anticipated any future difficulty in continuing his practice of deficit financing or that he anticipated a decrease in his business in the future. In contradiction of his claim that he was compelled to operate his business and support his family by deficit financing, the defendant was able to take his wife on vacations to Las Vegas, the Bahamas, and the Canary Islands, and was able to earn $40 to $45 a week in part-time employment in 1976 when not engaged in his own business. Under these circumstances, we find the plaintiff's claim that he was unable to pay the court-ordered support and alimony to be, at best, doubtful.

of the statutes, and did not act arbitrarily or in abuse of its discretion in the award for alimony or in the order transferring the real property.

The plaintiff finally claims that the court erred in allowing the defendant to testify that the plaintiff was the cause of the defendant's miscarriage when she was four and one-half months pregnant, as the court found. There was no expert testimony relating to this finding. The plaintiff argues that, at most, the defendant could have testified that she had suffered a miscarriage, but could not properly have testified as to the causation thereof. Since evidence of the cause of the miscarriage, or more broadly, of the medical effect upon the human system of the infliction of injuries, is generally not within the sphere of the common knowledge of a lay witness, we agree that it was error for the court to allow the defendant to testify in this regard. *Sickmund* v. *Connecticut Co.*, 122 Conn. 375, 379, 189 A. 876 (1937); *O'Meara* v. *Columbian National Life Ins. Co.*, 119 Conn. 641, 645, 178 A. 357 (1935); *Slimak* v. *Foster*, 106 Conn. 366, 368, 138 A. 153 (1927); cf. *Gordon* v. *Pevetty*, 138 Conn. 287, 290–91, 83 A.2d 494 (1951); see Tait & LaPlante, Connecticut Law of Evidence, § 7.16 (a) (5).[2] The defendant could properly only have testified that her husband had forced her to have sex with him when she was four and one-half months pregnant; that on the day following forced sexual relations with her husband she started to spot; that she went to a doctor who asked her whether it could be abusive sex; that she did not

---

[2] In addition to those authorities cited in the text, see the discussion of various aspects of this issue in *Green* v. *Stone*, 119 Conn. 300, 306, 176 A. 123 (1934); *Capolupo* v. *Wills*, 116 Conn. 13, 17, 163 A. 454 (1932); *Witkowski* v. *Goldberg*, 115 Conn. 693, 696, 163 A. 413 (1932); *Quackenbush* v. *Vallario*, 114 Conn. 652, 657, 159 A. 893 (1932); *Bates* v. *Carroll*, 99 Conn. 677, 679, 122 A. 562 (1923).

admit this to him; that she was in the hospital for two weeks; that she missed her son and pleaded with the doctor to permit her to leave the hospital; and that on the same night she lost the baby.

Although we find that the admission of the defendant's opinion was error, we find nothing in the record to indicate, nor does the plaintiff direct us to any aspect of the record which would indicate, that the defendant's opinion concerning the cause of her miscarriage prejudiced the court, or in any way affected the court's determination of the amount of alimony and support or the court's assignment of the plaintiff's interest in the family home. The record reveals overwhelming independent evidence of the breakdown of the marriage. Moreover, the court's combined award of alimony and support comported with the amount agreed upon by the parties prior to the dissolution hearing. Absent a showing of specific prejudice attendant upon the admission of the defendant's testimony, the error must be held harmless. *DeCarufel* v. *Colonial Trust Co.*, 143 Conn. 18, 21, 118 A.2d 798 (1955).

There is no error.

In this opinion the other judges concurred.