[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above couple were married in Mystic, CT Page 2368 Connecticut, on October 2, 1982. They have two children: Julia, born May 18, 1983, and Seth, born December 27, 1984.
The husband is a self-employed building contractor who attended college but has no degree. The wife likewise has no degree and is the sole proprietor of a retail clothing store in Mystic, known as The Beggar's Roost. He is thirty nine years old; she is thirty-six. Each is in good health.
The couple met in 1979 and lived together sporadically until the marriage. After the marriage the couple lived at 35 Water Street in Stonington, a dwelling bequeathed to the defendant prior to the marriage. Thereafter, they lived in an apartment on Trumbull Avenue until they moved into a dwelling on Flanders Road in Stonington in March, 1984.
The succeeding four and one-half years were marked by sporadic periods of acrimony. The plaintiff complains that the defendant was dominating the marriage and was uncommunicative to her. The defendant claims the plaintiff was verbally abusive to him. Both parties sought marriage counseling during this period.
In the fall of 1987 the plaintiff became interested in purchasing the aforesaid store. The defendant was firmly opposed but finally agreed to assist in the financing thereof by placing two mortgages on the Flanders Road property in exchange for the plaintiff's consent to mortgaging commercial property jointly-held, so as to provide working capital for construction of a dwelling being built by the defendant for speculation.
In October, 1988, the couple went on a vacation to Antigua. The plaintiff left for New York after the first night. Thereafter, the couple separated, and the defendant moved into the house that he was building for speculation. This action was commenced in November, 1988. The plaintiff and defendant are still separated.
It is clear to the Court that the marriage has broken down irretrievably and that there is no hope of any reconciliation. A decree of dissolution may enter on such ground.
On the issue of custody of the children and visitation, the Court notes that the parties have been sharing the children almost equally since the separation and that each dwelling is adequate to the needs of the children.
Accordingly, an order may enter granting sole CT Page 2369 custody of both children to the plaintiff with reasonable visitation to the defendant.
 At issue are the following matters: (1) Division of real estate (2) Division of personal property (3) Support (4) Alimony (5) Counsel fees
 I
Real Estate Valuation
The Court notes that the defendant, since he was twenty-one years old, has been involved in rehabilitation, construction and management of real property. He was also the beneficiary of a devise of the aforesaid property in Mystic. As of the date of marriage, the defendant owned the Water Street dwelling in Stonington, two three-family dwellings on Pierce Street in Westerly, and had a contract to purchase the Flanders Road property in Stonington.
The Water Street property was sold on August 10, 1983. On February 1, 1984, the defendant purchased a small commercial block on West Broad Street in Westerly using, in part, funds from the sale of Water Street. In December, 1984, the defendant sold the two three-family dwellings on Pierce Street. A portion of the proceeds was used in the construction of the dwelling on Flanders Road; some of the proceeds from the sale of Water Street also went into Flanders Road.
In December, 1987, the defendant purchased a building lot from his father on Marie Avenue in Stonington. The following month he placed a construction mortgage on the Marie Avenue property and proceeded with construction.
The Flanders Road property was subsequently mortgaged to Washington Trust Company for $73,000.00. Thereafter, it was mortgaged to Willimantic Savings Society for $85,000.00 and to the Bank of Mystic for $50,000.00 to provide funds for the purchase of The Beggar's Roost.
The West Broad Street property is subject to a mortgage to Washington Trust Company for $39,000.00 and a line of credit from Washington Trust Company in the amount of $95,000.00.
The Marie Avenue property is subject to a mortgage to Washington Trust Company in the amount of $195,000.00. CT Page 2370
The Court received evidence as to the fair market value of the various properties.
A. Flanders Road
James Blair, an appraiser testifying for the plaintiff, found the highest and best use of the property to be its present use, as a single-family dwelling and lot, and determined the fair market value to be $225,000.00.
The defendant offered several appraisals by Robert C. Cushman, Jr. Mr. Cushman was of the opinion that the highest and best use of the property was not its present use but as a three-lot subdivision consisting of the existing house with sufficient land to comply with zoning, and two other building lots.
The defendant offered as an expert witness Attorney Ladwig of Mystic. He testified as an attorney with extensive experience in real estate and land use matters in Mystic. Attorney Ladwig presented an analysis of the Stonington Zoning and Subdivision Regulations as they pertain to the site. He offered his opinion that three lots could be created from the property and be approved by the pertinent authorities.
The defendant also offered as an expert witness Stephen Steadman, a licensed surveyor, who submitted a preliminary subdivision layout, showing a three-lot development. (Exhibit 22)
Based upon the foregoing, Mr. Cushman found the value to be as follows: (Exhibit 15)
 1. Existing house and 8 acres $245,000.00 2. 6-acre lot 115,000.00 3. 6-acre lot 115,000.00 $475,000.00
It is the function of the court to determine the value of marital assets that may be assigned to one of the parties pursuant to section 46b-81. Sunbury v. Sunbury,216 Conn. 673, 676. Neither counsel disputes the proposition that "value" of real estate means "fair market value." The concept of "highest and best use of the land" is a fundamental concept in real estate valuation. D'Addario v. Transportation Commissioner, 180 Conn. 355, 365, and cases cited; Greenfield Development Company v. Wood, 172 Conn. 440, 449; State National Bank v. Planning and Zoning Commission, 156 Conn. 99,101. CT Page 2371
". . .in determining market value. . .it is proper to consider all of those elements which an owner or a prospective purchaser could reasonably argue as affecting the fair price of the land. . ." Budney v. Ives, 156 Conn. 83, 88.
In Budney, the Supreme Court held that a trier may consider the likelihood of rezoning of the subject parcel in reaching a valuation. Ibid., p. 90.
In the instant matter, the evidence indicated that the proposed use, i.e., residential subdivision, is permitted under the zoning regulations. The evidence offered also supports a finding that a three-lot subdivision would have a reasonable probability of approval. See Transportation Plaza Associates v. Powers, 203 Conn. 364, 376.
It should be noted that, from the evidence, rezoning is not an issue. A zone change is a legislative act and subject to an almost unlimited discretion. Malafronte v. Planning Zoning Commission, 155 Conn. 205, 208-9. In the instant matter the evidence showed that the only approvals were subdivision and inland wetlands. In each instance the action of the agency is bound by the regulations of such agency. See Beach v. Planning Zoning Commission, 141 Conn. 79,84.
"Evidence of the special adaptability of land for a particular purpose is properly admitted if there is a reasonable probability that the land could be so used within a reasonable time and with economic feasibility." Transportation Plaza Associates, p. 375. The testimony of Attorney Ladwig, with the supporting documentation, when coupled with the opinion of Mr. Cushman as to highest and best use and resulting valuation, is sufficient to support a finding by the court on this legal basis.
The Court notes that the subject property is presently subject to three mortgages with a face value of $208,000.00. (Defendant's Brief, p. 32).
As noted, supra, Mr. Cushman found the value of the property, based on a three-lot subdivision (Exhibit 15) to be $475,000.00. The Court finds that this proposed use constitutes the highest and best use of the land. The Court finds the fair market value to be $425,000.00, based upon the valuation of the house and lot at $225,000.00; and $100,000.00 for each of the other lots.
B. West Broad Street CT Page 2372
The premises at West Broad Street consist of commercial rental property. The valuation is not disputed to be $250,000.00, and the court so finds. The premises are subject to a mortgage of $134,000.00, showing an equity of $116,000.00.
C. Marie Avenue
Marie Avenue is a dwelling constructed by the defendant, into which he moved at the time of separation. The Court finds the value to be $240,000.00 and is subject to a mortgage of $195,000.00, showing an equity of $65,000.00.
 II
Income
The Court must next determine the net income of the respective parties to determine such issues as alimony and support. Collette v. Collette, 177 Conn. 465, 469.
In the plaintiff's financial affidavit (Exhibit A), the plaintiff claims as her principal source of earned income a draw from her business of $400.00 per week, or $21,800.00. Her current bookkeeper testified that that figure was arrived at by segregating the checks from the store's checking account that were used for personal expenses; e.g., food, automobile etc., as well as cash drawn.
"Net income" has been defined as "the total income received by the plaintiff from all sources, less the legitimate expenses of realizing it." Sturtevant v. Sturtevant, 146 Conn. 644, 648. The Court is handicapped in making this determination of the plaintiff's net income because she has not prepared a Schedule C to her income tax return for 1989. The credibility of the testimony offered is weakened by the income statement offered for calendar 1988 (Exhibit J) showing a draw by the plaintiff of $12,853.71, while the category of Travel-Buying Trips is $16,715.23. The plaintiff testified that such trips were primarily to New York City and included some overnight hotel and meal expenses.
The plaintiff's accountant testified that she anticipated the business would ultimately become profitable and that she expected a 10 percent increase in sales in 1990. Based upon the comparison of the figures for 1988 and 1989, it is reasonable to infer that the draw for 1990 will increase to $24,000.00. (The plaintiff offered no evidence as to federal tax liability, other than that the store operated at a loss in CT Page 2373 1988 and 1989.) It is reasonable to estimate the plaintiff's net income as $24,000.00, or $2,000.00 per month.
The defendant filed his federal tax returns for 1987, 1988 and 1989, as well as an estimate of net income in 1990. (Exhibit 1) His after-tax weekly income was shown to be $483.23 in 1988; $622.23 in 1989; and estimated to be $775.00 in 1990. His sources of income in 1990 are shown as net profit from self-employment (construction) $44,700.00; interest income, $1,000.00; and rental income (net) at $2,000.00. Significantly, the exhibit discloses no bank accounts, although there was some testimony that some of the defendant's working capital was deposited in interest-bearing accounts.
Having considered all of the criteria contained in sections 46b-40 through 46b-84 of the General Statutes, the Court enters the following orders.
I. Property Disposition — Real Estate
A. The defendant shall convey to the plaintiff all his right, title and interest in the real property known as 233 D Flanders Road, Stonington, Connecticut, subject to all existing mortgages, and the plaintiff shall pay such mortgages and all other obligations in connection therewith; and hold the defendant harmless from any claim, demand or action arising out of any such encumbrance or other obligation. The foregoing notwithstanding, the defendant shall pay any installment on the first mortgage to Washington Trust Company due on the date of this decision, and shall also pay any current or delinquent taxes due on such date. All such payments shall be made within thirty days from date hereof. Blake v. Blake, 207 Conn. 217, 232, and reference to statutory criteria therein.
B. The plaintiff shall convey to the defendant all her right, title and interest in the premises known as 29-31
West Broad Street, Pawcatuck, Connecticut, and the defendant shall hold the plaintiff harmless from any claim, demand or action arising from any obligations in connection with such property. Any delinquent taxes on the premises shall be paid by the defendant no later than thirty days from date.
C. The defendant shall retain the premises known as 4 Marie Avenue, Pawcatuck, Connecticut, and shall hold the plaintiff harmless from any claim, demand or action in connection with said premises.
II. Property Disposition — Personalty CT Page 2374
The plaintiff shall deliver to the defendant the items of personal property listed in Exhibit D except the items listed in Exhibit 28, together with the items listed in Exhibit 29.
III. Property Disposition — Business
The plaintiff's business, known as The Beggar's Roost, shall continue to be the sole property of the plaintiff, and the defendant shall have no claim or interest therein.
IV. Support
The defendant shall pay to the plaintiff the sum of $150.00 weekly as support for each of the minor children for a total of $300.00 per week. Each parent shall be responsible for any expenses for day care for any child during the period such child is physically with the parent, as well as for the expense of any parent's helper during such time.
The defendant shall maintain Rhode Island Blue Cross/Blue Shield insurance for each child during his or her minority. Unreimbursed medical and dental expenses shall be paid equally by the parties.
V. Alimony
The defendant shall pay to the plaintiff weekly $100.00 per week as alimony for a period of three years from date hereof, non-modifiable as to term and amount. The purpose of this award is to allow the plaintiff to complete the construction of the dwelling on Flanders Road, as well as to provide furnishings for the dwelling, and to provide assistance in carrying the mortgage to Washington Trust Company until the anticipated increase in her business is realized. It should be noted that the only increased burden on the plaintiff is the assumption of the first mortgage since the business is already carrying the other two mortgages.
VI. Debts
The defendant shall promptly pay the balance of an unpaid tuition bill at Pine Point School in the approximate amount of $2,900.00, and the balance of an overdraft due to Washington Trust Company in the approximate amount of $2,000.00.
VII. Counsel Fees CT Page 2375
Each party shall pay his or her attorney's fees. The parties have mortgage debt in the face amount of $437,000.00. The debt service thereon has apparently precluded the accumulation of liquid funds, and none appears from the financial affidavits. See discussion in Greene v. Greene,13 Conn. App. 512, 516, 517.
VIII. Motor Vehicles
Each party may retain the motor vehicle such party has been using during the marriage.
BURNS, J.