[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brought this action claiming, in the First CT Page 4270 Count of the Amended Complaint, that the defendant breached its insurance contract with the plaintiff by failing to pay a claim for boiler damage at the plaintiff's plant. The Second Count alleges violations of the Connecticut Unfair Trade Practices Act (CUTPA) resulting from the Defendant's failure to insure.
Based on a fair preponderance of the credible evidence, the court finds that the following facts were proven:
The plaintiff's plant suffered a sprinkler system freeze-up on or about December 31, 1987. As a result of the freeze-up, the plant was flooded with water which escaped from the water pipes. Shortly after the freeze-up, the plaintiff discovered that the plant's water heater/boiler was cracked across three of its sections and was inoperable. The boiler had been operable prior to the sprinkler freeze-up. The defendant's field inspector, Mr. Sjovall, had inspected the furnace in October, 1987, approximately two months before the freeze-up, and had issued a State safety certificate for the boiler. That was an external inspection only to determine operability and did not involve examining for cracks.
The plaintiff telephoned his insurance agent, Norman Sargent, at the Owens Insurance Company immediately after the freeze-up in order to notify him of the incident. The plaintiff also wrote to Sargent on January 4, 1988, concerning of the freeze-up. The Owens Insurance Company was the agent of the defendant for purposes of issuing the policy and collecting premiums.
Two different insurers covered casualty loss at the plaintiff's plant. One carrier covered damage to the inventory and equipment; the defendant covered damage to the furnace. After the plaintiff notified Sargent of the incident, the inventory and equipment carrier came to the plant, inspected the damage and issued a loss payment. Sargent, who did not testify at trial, did not notify the defendant of the boiler damage claim until February 19, 1988. Thereafter a representative of the defendant inspected the damage on February 21, 1988. At that point, nearly two months had expired since the freeze-up and, in the meantime, the plaintiff had disposed of the cracked furnace. Plaintiff had attempted to use the cracked furnace, but found that it was no longer operable to heat the plant. In order to obtain heat to continue plaintiff's operations, plaintiff believed it necessary to replace the old furnace. Replacement, rather than repair, was chosen because plaintiff believed the furnace was cast iron and could not be welded. In fact, according to the more persuasive evidence, the boiler was made of steel. The cost of the new furnace was $9,621.25. It is not economically or practically feasible to repair a cast iron boiler but a steel furnace can be repaired. The old furnace was removed when the new one was installed in order to save additional hauling costs. The CT Page 4271 defendant was not notified of the replacement and disposal until after those events had occurred.
Although the defendant's inspector, Mr. Sjovall, had inspected the furnace in October, 1987 for State of Connecticut certification, he could not remember what size or make it was. According to the defendant's engineer, Wayne Harding, the boiler was a "Pacific" steel boiler which is repairable. The "Pacific" company never made cast iron boilers. None of the defendant's employees had an opportunity to inspect the cracked furnace after the freeze-up.
The pertinent insurance policy provisions, read as follows:
"ACCIDENT
 "Accident" means a sudden and accidental breakdown of the "Object" or part of the "Object". At the time the breakdown occurs, it must manifest itself by physical damage to the "Object" that requires repair or replacement.
. . .
Notice of Accident
 At our expense, you must immediately give notice of "Accident" to any of our offices. You must confirm that notice in writing.
. . .
Duties after an "Accident"
 You have the following duties after an "Accident":
 (a) You, or someone acting on your behalf, must immediately notify us in writing.
 (b) You must not allow repairs to be made or physical evidence of the "Accident" to be removed until we have had time to examine the property and premises. But you may take whatever measures are necessary for protection from further damage.
 (c) You must present your claim in writing in the form we require. CT Page 4272
. . .
 In addition, the policy contains the following advisory language:
WHAT TO DO IN CASE OF AN ACCIDENT.
 This checklist will help you expedite your claim. The Policy's conditions define your duties after an Accident. These tips do not alter those conditions, but they will help make the handling of your claim easier.
 1. Whenever you suspect an Accident has occurred notify your agent or Hartford Steam Boiler at once."
Three principal issues are presented in this case: (1) whether notice to the Owens Insurance Company of the occurrence of the loss served as notice to the defendant; (2) whether plaintiff proved that the crack in the boiler was caused by the freeze-up and, if so, whether it is a covered accident under the policy terms; and (3) whether the plaintiff violated the terms of the policy by not providing the defendant with an opportunity to inspect the boiler after the alleged loss and prior to disposal of the boiler.
It is well-established that the plaintiff has the burden of proving its claim including, specifically, that the loss falls within the terms of the policy. Wojcik v. Metropolitan Life Ins. Co., 184 Conn. 532 (1938); O'Meara v. Columbian National Life Ins. Co., 119 Conn. 641, 644 (1935).
In this case, the plaintiff failed to establish persuasively that the boiler damage was caused by the freeze-up and, thus, was an accident within the policy terms. While there was evidence that the boiler was operable prior to the freeze-up, the occurrence of cracks and causation of damage was left in the realm of conjecture. Plaintiff failed to produce any expert testimony as to causation and, in fact, failed to provide convincing evidence as to when the cracks occurred. Because of the plaintiff's failure to notify the defendant specifically of the planned disposal of the boiler, prior to its occurrence the defendant did not have a reasonable opportunity to inspect for the purpose of determining the nature and causation of the cracks and boiler failure. Convenience, rather than necessity, prompted the removal of the boiler, without adequate notice to defendant.
The plaintiff thus, has failed to prove that the breakdown CT Page 4273 was an "accident" as defined by the policy. Although the determination of that issue disposes of the case, the court concludes further that the plaintiff, although properly giving initial notice of the incident to defendant by notifying its agent, City of West Haven v. U.S. Fidelity Guaranty Co.,174 Conn. 392 (1978), failed to comply satisfactorily with the policy provision which, reasonably construed, prohibits the insured from repairing or removing the physical evidence of a claimed "accident" pending examination by the defendant insurer. That failure to comply, itself, would bar plaintiff's recovery in this case, as well.
For the foregoing reasons, the court finds that the plaintiff has failed to prove the essential allegations of Count I of the Amended Complaint. There is no credible evidence to prove the allegations of Count II. Accordingly, judgment may enter in favor of the defendant.
BARRY R. SCHALLER, JUDGE