[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint dated October 20, 1999 and filed with the court on November 17, 1999, in which complaint the plaintiff petitioner, Beverly Lattanzio, sought a dissolution of the marital union, joint legal custody with reasonable rights of access to the minor children, alimony, an equitable distribution of property and division of debts, restoration of the birth name to the plaintiff of Beverly Lavoie and such other and further relief as law and equity may allow.
To the complaint were attached the usual automatic orders and in addition thereto there was attached to the complaint a motion for alimony and health insurance pendente lite and a motion for joint legal custody and access pendente lite. A copy of the plaintiff petitioner's financial affidavit accompanied the complaint and also the return of the deputy sheriff making service of process on the defendant.
On November 16, 1999 the defendant filed an appearance by counsel. On December 6, 1999 there was filed with the court an agreement of the parties pendente lite providing for the sharing of joint legal custody of the two minor children, provision as to the defendant being the primary custodial parent and visitation rights as spelled out in the agreement and a provision whereby the defendant would pay the plaintiff $100.00 periodically as pendente lite alimony and requiring the defendant to continue to maintain the plaintiff on his health insurance.
On December 7, 1999 an answer and cross complaint were filed by the defendant and in the cross complaint the defendant claimed a dissolution of the marriage, custody of the minor children, an equitable property settlement, reasonable access of the minor children to the plaintiff and other equitable relief.
On February 3, 2000 there was an appearance filed with the court by the attorney general for the State of Connecticut for the purpose of representing the interest of the state, Department of Social Services, in this proceeding.
On January 31, 2000 there was an agreement filed with the court by the parties making provision whereby the plaintiff would receive $100.00 a week as temporary alimony through March 31, 2000 when the order would be subject to review. The agreement also provided for counseling as to one CT Page 14593 of the minor children and provisions as to an ongoing visitation schedule.
The plaintiff filed a further financial affidavit on January 31, 2000. The defendant filed a financial affidavit as of January 31, 2000.
On April 10, 2000 the plaintiff filed another motion for temporary alimony and on April 10th the defendant filed a motion to terminate any outstanding alimony. The agreement of the parties dated April 24, 2000 was approved by the court, Kenefick, J. That agreement provided that alimony would be suspended!discontinued without prejudice pending further order of the court.
Further and current financial affidavits were filed by both the plaintiff and the defendant on April 24, 2000.
On May 19, 2000 the matter was dismissed by the court, Kenefick, J., in that the Case Management Agreement (CMA) had not been filed within the appropriate time frame.
The defendant filed a motion to open the judgment of dismissal on June 27, 2000, which was granted by the court, Dyer, J.
On September 19, 2001 the matter was again dismissed for failure to file a CMA by the court, Devine, J.
On September 25, 2001 the plaintiff and the defendant each with their respective counsel appeared before the court and the matter was heard to a conclusion. In addition to counsel for
the plaintiff and the defendant, counsel from the Office of the Attorney General appeared and participated in the proceedings.
 Note: Counsel appeared again on October 12, 2001 incident to requests as to the filing of legal briefs.
 The court makes the following findings of fact:
The plaintiff, whose maiden name was Beverly Lavoie, and the defendant were joined in marriage in Hyde Park, a section of Boston, Massachusetts, on June 21, 1981.
Both the plaintiff and the defendant have been residents of the State of Connecticut for more than one year preceding the date of the original complaint. CT Page 14594
The plaintiff and the defendant have two minor children issue of this marriage whose names are Elyse Lattanzio born November 3, 1983 and Jonathan Lattanzio born June 24, 1985. No other minor children have been born to the plaintiff wife from the date of the marriage to the present time.
The plaintiff does receive medical assistance from the State of Connecticut.
At the commencement of the proceedings at the request of counsel, the prior dismissal by Devine, J. was vacated and the matter was reinstated in order that the same might proceed. All counsel joined in this request to the court. The request was granted.
Both children of this marital union, Elyse Lattanzio and Jonathan Lattanzio, attend Montville High School. The child Elyse is a senior at said high school and the child Jonathan is a sophomore.
The plaintiff is now age 43. In the past, prior to her present disability, she was employed for a time at Sears. Subsequently, the plaintiff was employed at Caldor's. This employment was terminated due to emotional problems that beset the plaintiff.
The Social Security Administration according to the testimony found the plaintiff eligible for disability benefits in 1993. According to the testimony, the diagnosis at that time was one of the plaintiff being afflicted with manic depression. The current diagnosis, according to the testimony, is that the plaintiff is afflicted with post traumatic stress disorder.
The plaintiff receives ongoing medical treatment from various practitioners including Dr. A. Awyer. The plaintiff sees this medical practitioner on a weekly basis. In addition, the plaintiff sees a counselor named Medberry twice a week and attends group therapy on a weekly basis. The plaintiff suffered injuries as a result of an automobile accident two years ago which resulted in part in a metal pin being inserted in one of her legs. The plaintiff sees a chiropractor with regard to pain and difficulties pertaining to that particular problem. The testimony was to the effect that the plaintiff suffered heart attacks during the period March through June of 2001.
The plaintiff apparently recently suffered an emotional breakdown which required her being admitted to the Backus Memorial Hospital in Norwich. She was in the hospital incident to that problem for approximately one week and receives a regimen of medications; the testimony being to the CT Page 14595 effect that she takes 19 different prescriptive medications on a daily basis. In addition, the plaintiff takes Darvocet for pain.
The plaintiff testified that she cannot now participate in any gainful employment and presently receives $446.00 a month Social Security disability benefits, $104.00 a month SSI, $48.00 a month for food stamps and that these income figures would be affected in the event that the court grants an alimony award to the plaintiff.
The plaintiff resides in Norwich in a facility and residence assisting disabled persons. Her rent is determined by the extent of her income. She receives medical insurance from the State. The insurance covers 100% of her medical costs. The plaintiff receives benefits or assistance with regard to transportation arrangements to and from the various medical practitioners that she is required to resort to. The plaintiff is not able to drive an automobile. There is a $20.00 co-pay with regard to each of the prescriptions that the plaintiff is involved with as concerns her drug regimen.
The testimony was to the effect that the plaintiff is agreeable and amenable subject to the approval of the court of joint legal custody as to the minor children with the defendant husband being the primary custodial party.
In her testimony and initial proposed orders, the plaintiff requested $300.00 a week for permanent alimony and a request that the defendant continue to provide medical coverage mindful of the COBRA time limitations for medical, health and allied benefits which presently apparently cost her or those that are providing the assistance by the State to the amount of $62.00 a week. The plaintiff indicated that she was willing and disposed to waive her equity interest in the home.
The plaintiff indicated she was willing to waive any interest in the defendant's 401K. The plaintiff has one debt according to her testimony to a Dr. Matayas for $516.00. She indicated that she is willing to be responsible for that debt.
The testimony was to the effect that some time ago the parties went through bankruptcy proceedings, which presumably extinguished their liability for debts and obligations that were outstanding at that time.
The plaintiff's present home is known as Rosewood Manor. It is a home for people who are disabled and, as earlier noted, an alimony order by the court would have apparently an effect with regard to the nature and the extent of the benefits which she is now receiving from various sources. CT Page 14596
The arrangement between the plaintiff and the defendant apparently has been that the defendant provides transportation in bringing the children to the plaintiff for purposes of ongoing visitations and contacts.
The plaintiff appeared quite fearful with regard to the prospect of losing any of her present in place benefits and indicated that she has on occasion a tendency to be suicidal.
The State of Connecticut apparently picks up the co-pay payments with regard to the litany of the plaintiff's prescription regimen.
This is a marriage of slightly over 20 years.
The plaintiff testified and the court finds that the marriage has broken down irretrievably. The plaintiff's testimony was to the effect that the defendant tired of the plaintiff's apparently long outstanding medical problems and told the plaintiff that this sort of situation was "no good for the children". In addition, it would appear that there was some verbal abuse by the defendant to the plaintiff.
The child Elyse will be 18 in November. It is hoped that she will be able to go on to higher education. Her health allegedly is good.
Jonathan is age 16, a sophomore at Montville High School. He is presently experiencing some difficulty in school.
This is the first and only marriage for both parties.
While the plaintiff is somewhat fearful as concerns any disruption of her present medical structure and housing structure, it appears that the request by plaintiff's counsel for $300.00 a week would not affect the plaintiff's eligibility as concerns the Social Security disability benefits of $446.00 a month. It would apparently impact the SSI plus the food stamps.
The plaintiff is age 43. Her education extended through two years of college.
The defendant verified that the marriage has irretrievably broken down.
He has been, apparently for some time, the primary caretaker of the two children. The defendant works daily at his position 7:00 a.m. to 4:00 p.m. He cares for the children and feeds them. The monthly mortgage payment on the home is $694.00. The defendant testified that hopefully Elyse will be bound for college and is a good student. CT Page 14597
The daughter Elyse apparently has a part-time position to earn some funds for herself.
The daughter Elyse has a learning permit with regard to being able, prospectively, to drive one of the two automobiles owned by the defendant.
Incident to his employment, the defendant expects perhaps a 3% increase at the time of the next review of his status.
The defendant is desirous of keeping and maintaining the home, not only for himself but for the children.
The defendant has been at his place of employment Proto Power Corporation where he is employed as a mechanical designer for three years.
In the past, after filing the requisite annual income tax returns, the defendant has experienced some small modest refunds.
In his work as a mechanical designer, the defendant is involved in designing piping systems for industry.
The defendant is age 50. His education extended through two years in college. He has been three years at his present employment with Proto. The defendant's health was described as being very good.
The defendant makes no request for support for the minor children as concerns the plaintiff, mindful of her present situation.
From the financial affidavits filed by the parties, the court finds as to the plaintiff her occupation is listed as being disabled. She receives on a weekly basis Social Security disability benefits of $127.00, food stamps, $12.00; for a total of $139.00 a week. Her expenses are listed as $138.00 a week. The plaintiff shows a debt to Dr. Matayas of $569.00. The plaintiff is one of the joint owners of premises known as 29 Carol Drive in Uncasville. Property, according to the plaintiff's valuation, is $113,000.00 with a mortgage debt of $60,000.00 for a total equity of $53,000.00. The plaintiff shows no ownership of a motor vehicle; household furnishings valued at $500.00; total cash value of all assets $53,500.00. The $53,000.00 of course, as earlier noted, is the total equity. The plaintiff's interest is one half thereof
From the defendant's financial affidavit, as earlier indicated, he is a mechanical designer at Proto Power Corporation; gross weekly income from CT Page 14598 employment, $1,057.50; deductions: medical $31.00, FICA $64.00, FIW $95.00, SIW $42.00, medicare $15.00; for a total of deductions of $247.00 for a net of $810.50. Weekly expenses are shown as $783.00. A debt to Dr. Matayas, $950.00. The defendant values the 29 Carol Drive, Montville, Connecticut home as in the same fashion as the plaintiff does, $113,000.00. He shows, however, a mortgage debt of $54,000.00 with an equity of $59,000.00; two automobiles, a 1993 Dodge valued at $2,500.00 and a 1991 Buick valued at $2,000.00; a computer and miscellaneous $1,500.00; $300.00 in the bank, Stone and Webster stock, $100.00; no value as to any life insurance, a 401K, $18,081.00; Putnam $2,913.00; Fidelity, $2,500.00 for a total of $23,431.00; a 12-foot sailboat, $800.00. Total cash value of all assets $89,631.00. This, of course, reflects the total equity in the house of which the defendant's interest is one half
The court has jurisdiction.
Neither party is in the military or naval service of the United States.
 Discussion
This is a marital union of 20 years plus three months.
The plaintiff is age 43. The defendant is age 50.
Their respective educations are about on an equal par, two years college each.
The defendant's position as a mechanical designer for Proto Power Corporation appears fairly stable and his earnings are fairly good.
The defendant's health as testified to is apparently good.
On the other side of the coin, the plaintiff at age 43 is classified as disabled by virtue of the determination by Social Security and based on the court's observations of her person, attitude and responses in court, it would appear that the plaintiff is afflicted with emotional and physical problems of a fairly substantial degree.
The plaintiff spoke in a low hesitating voice during the proceedings, was easily given to tears and appeared fearful.
The testimony in this proceeding was limited to that of the plaintiff and the defendant. No medical practitioner testified nor was the court provided with medical reports or statements as concerns the plaintiff's condition and degree of disability. CT Page 14599
The child Elyse now age 17 will be 18 on November 3rd of this year, about 1-1/2 months from now. The child apparently is doing well in school. The child Jonathan is 16 and apparently is experiencing some problems in school.
The deterioration and breakdown of this marriage apparently is attributable unfortunately to the plaintiff's breakdown in health and allied problems. There is no indication nor was there any testimony as concerns any physical violence or problems with regard to the immoderate use of spirits or illegal substances.
The plaintiff lives in a disabled housing situation, relies on others for transportation including transportation for contacts with the children.
It would not appear that there is any near term prospect for the plaintiff to be engaged in employment which would assist in her situation becoming more financially stable. While the plaintiff has indicated to the court that she would like to have things stay pretty much as they are in terms of the benefits structures that presently exist, the court, of necessity, must be concerned with what is in her best interest and welfare and stability over a long term.
The plaintiff and the defendant are apparently in accord as indicated to the court by their respective counsel and the parties that there should be joint legal custody as to the two minor children, Elyse and Jonathan. They are apparently also agreed with regard to the defendant father being the primary custodial parent and under the circumstances it does not appear that any useful purpose would be served by requiring the plaintiff to make any contribution for support.
The plaintiff qualifies for health insurance through the State of Connecticut (i.e., Medicaid) and her husband's employment. Her primary health insurance policy is through the defendant's employment and the Medicaid program pays the rest of her medical bills. As a result, the costs of her visits to physicians and medical practitioners, counseling sessions, group therapy and chiropractor's visits are covered 100%. In addition, the Medicaid program pays for the cost of transportation associated with her medical visits.
Pursuant to a prior order of the court, a pendente lite order, where the plaintiff was paid $100.00 a week in alimony, caused the plaintiff to lose her monthly SSI payment and made her ineligible for the Medicare program. At that juncture, the plaintiff's only health insurance was through the defendant's employment and under this policy she was required CT Page 14600 to pay $20.00 as a co-payment for each of her prescriptions and her doctors' and counselors' visits.
It is the court's understanding on the basis of comments by the representative of the Attorney General's office that the plaintiff could receive as much as $212.00 a month in the form of "alimony" and still be eligible for Medicaid.
Following the close of evidence at trial, counsel for the plaintiff and the defendant submitted combined plaintiff's and defendant's proposed orders. Under this joint proposal, the defendant would pay alimony to the plaintiff in the amount of $212.00 a month for life, subject to the plaintiff's remarriage, death or further order of the court or cohabitation as provided under the statute, and in addition thereto that the defendant would pay the plaintiff's COBRA expenses for three years.
As earlier noted, the plaintiff had indicated to the court a willingness to waive her interest in the marital home and the defendant's 401K and other assets.
In compensation thereof by agreement, apparently the defendant has agreed to pay the cost of a college education and tuition for both of the two children named above for four years at the rate of tuition charged by the University of Connecticut. A suitable document evidencing the defendant's willingness to assume that obligation has been presented to the court and signed by both counsel and the defendant individually.
This action involves a 20 year marriage and there is no issue as to the plaintiff being currently disabled and unable at this juncture to return to work. As noted, the court has carefully considered all of the criteria set forth in 46b-82.
The cost to the defendant on a monthly basis for the health insurance aspect to protect the plaintiff amounts to $267.00 monthly; a fairly substantial sum.
Again as noted, mindful of the 19 prescription medications regimen, the appointments with the plaintiff's chiropractor, sessions with her counselor and visits with other medical practitioners, if the plaintiff were to lose her eligibility for Medicaid she would face up to 37 co-payments a month, totaling $740.00. In addition, she would be required to pay for transportation incident to her medical appointments. The plaintiff has 18 such appointments each month. The plaintiff would thus incur another $288.00 in travel expenses each month. In consequence thereof, without Medicaid under its present framework, the plaintiff would face total medical costs of $1,028.00 each month ($740.00 for CT Page 14601 co-payments and $288.00 for travel).
The proposal submitted by the State, while understandable, would create a situation where the plaintiff would be unable under the suggestions made by the State's advocate to cover these costs and would destroy the plaintiff's eligibility under the present structure.
The defendant has complete responsibility for the financial care of the parties' two teenage children who apparently in the main are doing fairly well. Understandably, the plaintiff cannot make a financial contribution at this juncture.
As shown by the defendant's financial affidavit, his weekly net income is $810.50; weekly expenses of $782.00, for a modest surplus. In order for the defendant to comply with the requests by the State, he would have to cut or eliminate expenses amounting to more than $320.00 a week, which probably is an impossibility and in any event would affect the welfare of the children and the stability of the home.
The court has endeavored to consider not only the immediate needs of the plaintiff but the ability and some modest degree of financial stability for the two children who are at an impressionable age.
Plaintiff's counsel urges upon the court the suggestions outlined in plaintiff's trial brief dated October 17, 2001 as being in the best interest of all concerned; particularly mindful of the defendant's having undertaken the obligation to pay for the college tuition of the children, which manifestly would be for their benefit, and hopefully a course in which the plaintiff, if she were in different circumstances, would join.
The proposals outlined immediately above have been submitted by counsel for the plaintiff and the defendant and the court has the authority and ability to take payment of college expenses into account as concerns financial issues between the parties, citing Breen v. Breen,16 Conn. App. 166, 173 (1989) and Eversman v. Eversman, 4 Conn. App. 611,616 (1985).
Mindful of the court's earlier observation as to not being in receipt of any medical testimony by a qualified practitioner or any written medical reports, the court nevertheless is cognizant as to the ability of a lay witness to testify as to medical conditions, citing Collette v.Collette, 177 Conn. 465, 471 (1979) and State v. Orsini, 155 Conn. 367
(1967).
 The Law
CT Page 14602
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-82 regarding alimony and §§ 46b-55, 46b-83 and 46b-84
as concerns support.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties, their candor or lack thereof and the arguments of counsel. The only exhibits presented to the court were the financial affidavits.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the irretrievable breakdown and dissolution, the age, health, station, occupation and employability or prospects thereof of each of the parties and the estate and needs of the parties. The court has considered the standards of living of the parties.
The court has considered the age of the children, the medical problems which beset the plaintiff.
The court has considered the respective financial positions of the parties and their prospects, if any, for future income and opportunities.
The court has considered the issue of fault.
In considering the foregoing, the court notes the request by the representative of the Attorney General's office that the court should be mindful of the holding in Sands v. Sands, 188 Conn. 98 (1982) and from that decision the court observes, in part, mindful of the expressed wishes of the plaintiff at the time of trial, the following: "A court hearing a divorce is not free to enter the relief sought just because all the parties agree that the relief is desirable." Further, the State has a valid interest that should be considered in every divorce action citingYontef v. Yontef, 185 Conn. 275.
Further from the Sands memorandum, it is the duty of the court to consider and protect the interest of the State or the public, as well as the rights of the parties themselves, and where there is a conflict between the interests, the interest of the State will be regarded as paramount.
Further from Sands, "As this court recently stated in Robinson v.Robinson, 187 Conn. 70, because an action for dissolution of marriage is a creature of a statute, it is sometimes assumed that this statute not CT Page 14603 only creates the grounds for relief, but also circumscribes the remedy." Although created by statute, a dissolution action is essentially equitable in nature, citing Pasquarello v. Pasquarello, 168 Conn. 579.
Further, "the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. In the exercise of its inherent equitable powers, it may also consider any other factors besides those enumerated in the statute which may be appropriate for a just and equitable resolution of the marital dispute."
The court has also considered the recent decision in Genarro Tevoliniv. Pamela Tevolini, App. Court 19861 released October 2, 2001 mindful of the issues presented in that proceeding involving disability and social security. In the Tevolini case, contrary to the situation in this matter, Lattanzio, the husband had requested of the court an order requiring the defendant in that proceeding to undergo a physical examination as concerns the issue of disability and in Tevolini the court apparently relied upon the determination by Social Security as being conclusive as to the disability circumstances of the defendant in theTevolini case. In this proceeding, Lattanzio, as earlier noted, the only testimony presented to the court was the testimony of the plaintiff and the defendant. No medical testimony was submitted to the court nor were there any medical reports, findings or other data presented as exhibits. One of the concerns of the court therefore in this proceeding is whether or not on the basis of the evidence before it the court can make a valid determination that in fact the plaintiff in this proceeding is and was totally disabled. The court is mindful that it may rely on the testimony of the parties plus the court has already noted in an earlier portion of the memorandum its observations visually of the plaintiff as she testified and endeavored to make a reasonable assessment as to the state of her physical well being. One of the concerns of the court is whether the determination by Social Security as to total disability, mindful of the administrative procedures relative to such a proceeding, are to be equated with a judicial determination with the rights and privileges pertaining to the Rules of Evidence there would attend such a matter.
From Tevolini the court notes, "our Supreme Court has stated that health is a material factor in awarding alimony," citing McGuinness vs.McGuinness, 185 Conn. 7 and Gallow vs. Gallow, 184 Conn. 36.
Continuing from Tevolini, "a party's health is one of the factors which draws its significance in part from the impact it necessarily has upon other statutory (46b-82) factors.
The court notes again from Tevolini that under 46b-82 in determining CT Page 14604 whether alimony shall be awarded and the duration and amount of the award, the court shall hear the witnesses, if any, of each party. As earlier noted, the only witnesses in this proceeding were the plaintiff and the defendant.
Again from Tevolini, whether the amount presently being received by the plaintiff in this proceeding is for "total disability" is not disclosed by any evidence other than the testimony of the plaintiff and the defendant. The representations or statements of counsel of course do not constitute evidence, citing Cologne v. West Farms Associates,197 Conn. 141. The court then in a very real sense is left in the absence of documentary evidence of the plaintiff in this proceeding as to being totally or fully disabled as far as her health is concerned supported only by her own testimony admittedly not opposed by the defendant husband.
Again citing Tevolini, the issue of the plaintiff's health being a matter that must be decided by the court, query was it incumbent upon the plaintiff to offer outside independent evidence to support that claim. SeePowers v. Powers, 186 Conn. 8. Was the plaintiff's testimony as concerns the nature and the extent of her benefits such as to create an irrebuttable presumption which is in effect binding upon the court.
Again from Tevolini, admittedly the defendant husband had presumably available to him certain means, discovery and otherwise, by which he perhaps or presumably has satisfied himself as to the nature and the extent of the plaintiff's disability in these circumstances,
Also as earlier noted, not only were there no medical reports presented to the court but there were no tax returns of the parties for prior years submitted as exhibits either.
Mindful of the requests contained in the plaintiff's proposed orders, which amount to a request for lifetime alimony, it would appear that it was incumbent upon counsel to provide exhibits or testimony independent of the plaintiff or the defendant. The court however cannot try the case for counsel.
Additionally, the court notes that while there was testimony during the proceedings as concerns the plaintiff being involved in an automobile accident two years ago and the injuries resulting therefrom requiring a pin being placed in one of her legs, there was no testimony nor were there any exhibits with regard to the present status of that case, whether it had been settled, demands or the nature thereof which would have been helpful to the court in assessing the overall respective financial positions of the parties. CT Page 14605
Also, while as noted, there were no medical reports provided; this included the court not being in receipt of any medical report from the Backus Hospital with regard to the most recent admission of the plaintiff for problems already touched on.
See also Hayes v. Haves, Docket No. 33-85-22, Superior Court, Judicial District of Hartford/New Britain, Steinberg, J. 1990.
The Court enters the following orders.
The court finds that the marriage has broken down irretrievably and there is no reasonable prospect for reconciliation or rehabilitation.
The plaintiff wife's medical condition seems to have been a substantial contributing factor in the breakdown of the marriage but clearly this was not an intentional course of conduct and therefore there is no substantial fault to be laid at the door of either party.
The plaintiff and the defendant shall share joint legal custody of the two minor children, Elyse born November 3, 1983 and Jonathan born June 24, 1985. The defendant father shall be the primary custodial parent and the children shall reside with him mindful of the plaintiff wife's physical condition.
The plaintiff shall have reasonable and liberal rights of visitation with the minor children and the defendant shall continue to provide transportation of the children to the plaintiff's residence.
The plaintiff, on the basis of her present circumstances, both health and finances, shall pay no child support to the defendant based on her present condition. This issue, however, may be addressed in the event of a recovery by the plaintiff from her present medical and/or psychological problems.
The defendant husband shall maintain the plaintiff on his medical insurance as available through his employer through the COBRA plan at his cost for a period of three years so long as the plaintiff qualifies therefore. The payment of the premium shall be construed as alimony in part and shall be non-dischargeable in bankruptcy.
The defendant shall pay alimony to the plaintiff mindful of the foregoing provision as to COBRA coverage for the maximum three-year period in the amount of $212.00 per month. The alimony may be subject to modification by further order of the court particularly in the event that there should be a change in the plaintiff's physical circumstances; to CT Page 14606 wit, that she should be recovered and be able to participate in some form of gainful employment or to terminate upon the death of either the plaintiff or the defendant or the remarriage of the plaintiff or her cohabitation pursuant to the provisions of the statute.
As to the marital residence at 29 Carol Drive in Montville, the plaintiff shall quitclaim all of her right, title and interest in the marital residence to the defendant. The defendant to provide to the plaintiff a mortgage in the amount of $30,000.00, non-interest bearing, to be due and payable, sooner upon the occurrence of the first of the following: (1) the sale of the home, (2) the youngest child attaining the age of 19 unless a full-time college student, in which case upon graduation from college or age 22, (3) the remarriage of the defendant or in any event September 20, 2008.
The defendant shall be responsible for the outstanding mortgage on the home premises and pay and discharge the same and hold the plaintiff harmless therefrom.
The defendant may retain his 401K, his Putnam retirement account and the Fidelity account and his $800.00 sailboat.
As to life insurance, the two minor children, Elyse and Jonathan, shall be named as irrevocable beneficiaries as concerns the outstanding $100,000.00 life insurance policy on the life of the defendant and he shall continue to keep the same in full force and effect until the youngest child attains age 23.
By virtue of the combined plaintiff's and defendant's proposed orders on the date of October 5, 2001 and at the request of both plaintiff's and defendant's counsel with the approval of their principals, the defendant shall assume the responsibility to pay for the college education for the two minor children if they attend college up to age 23 for each child. This obligation shall be met at the cost of tuition charged on that entry date by the University of Connecticut for in-state students.
The defendant shall be obligated to pay for tuition, room and board and books for four years for each child that attends college. The court enters this order based on the combined plaintiff's and defendant's proposed orders to which both counsel and the defendant are signatories.
The defendant husband shall be responsible for the outstanding balance of the dental bill and statement due and owing to Dr. Matayas.
Each party shall be responsible for their own counsel fees. CT Page 14607
The plaintiff's maiden name of Lavoie shall be restored to her.
There were no requests by counsel as to attorney's fees.
The court, in structuring the memorandum of decision, has endeavored to balance the respective rights and obligations of the parties before the court.
The court has endeavored to be mindful of the requests and position taken by the plaintiff, her medical condition and circumstances, the circumstances surrounding the defendant's maintenance of the home.
The court has considered an important issue to be preservation of the home for the two teenage children and the prospects for as much stability as possible for them and hopefully their education through college. The court has been mindful of the requests made by the Attorney General's office through Attorney Mondell and has endeavored as best it can to balance the respective competing interests with the primary emphasis being on the welfare of the plaintiff petitioner because of her condition, a realistic assessment of the defendant's assets and financial stability and stability to the extent that it is possible for the children.
The court has been particularly mindful of the joint proposed orders submitted by the plaintiff and the defendant, both the proposed orders initially submitted and the proposed orders signed by both counsel of record and the defendant making the requests which have been touched on in this memorandum.
Austin, JTR