GERTRUDE GREEN *vs*. EMERSON L. STONE.

MALTBIE, C. J., HAINES, BANKS, AVERY and DICKENSON, Js.

Argued November 8th—decided December 4th, 1934.

*Philip R. Shiff,* with whom, on the brief, was *Robert J. Woodruff,* for the appellant (plaintiff).

*Cyril Coleman,* with whom, on the brief, was *Lawrence A. Howard,* for the appellee (defendant).

AVERY, J. This was an action for a breach of contract and for malpractice against the defendant, a physician and surgeon of New Haven. The jury brought in a verdict in favor of the plaintiff, which the trial court set aside on the ground that there was no evidence to show that the plaintiff's injuries were caused by any act or omission of the defendant. The only matter involved in this appeal is the correctness of the action of the trial court in setting aside the verdict. From the evidence certified, it appears that the parties were not much in dispute up to a certain point. The defendant was a specialist in obstetrics, practicing in New Haven. On January 4th, 1931, he was retained by the husband of the plaintiff to attend her in connection with the delivery of an expected child. The plaintiff was then a young married woman and about three months pregnant. The defendant saw her at regular intervals of about a month and, as she approached the termination of her pregnancy, the intervals between the visits were shorter, his last examination being on July 30th when he found that she was practically at the end of her term. She entered the

New Haven Hospital on August 4th and the child was delivered upon the day following. The plaintiff's period of labor was somewhat more protracted than ordinary; and, owing to the fact that it was her first child and she was a closely built woman, the defendant made an incision in her perineum to prevent the rupture of that tissue at the time of delivery. After delivery, the incision was sutured. A few days after delivery, the plaintiff complained to the defendant of pain in the region of the sutures but was reassured by him. Ten days after delivery, the sutures were removed by the defendant at the hospital, the wound examined by him, and it appeared perfectly healed; the plaintiff was discharged from the hospital on the day following with directions to see the defendant four weeks later for the purpose of an examination and checkup.

Up to this point, there is nothing in the evidence upon which the plaintiff could claim that the care and treatment received by her was other than the care and skill required of a specialist in this line of surgery practicing in that locality. The dispute between the parties relates to what occurred after she left the hospital and returned to her home. The plaintiff claimed that a few days after leaving the hospital, she noticed a pus discharge from the sutured holes and felt pain; that she telephoned the defendant and reported these facts immediately, and thereafter called him during the following two weeks five or six times, but each time was told to wait until six weeks after delivery for a further examination. The defendant denied that she had informed him during this period of a pus discharge from the sutures, and had no recollection that she had telephoned to him at all. However, six weeks after delivery, on September 14th, the defendant examined the plaintiff at his office. At that time, the incision

in the perineum appeared to him to be healed, but he observed what appeared to be a dimple on the skin at the bottom of the incision. He was unable to insert a probe at this point, but as the plaintiff complained of tenderness in the region, he directed her to return for further examination at a later date. On October 9th, she was examined by him again, when he found a small sinus opening at the point where the dimple had been, about the size of the lead in a pencil. He was able to follow this opening with a fine probe to a depth of about three-quarters of an inch, where it appeared to end. He irrigated and curetted it, and touched up the edges with silver nitrate. On November 7th, he saw the patient again but, as he claimed, was unable to treat her because of the hysterical condition she was in and directed her to call later. Plaintiff, on the trial, claimed and the defendant denied that he had at that time informed her that he did not know what to do and that her condition was incurable. On November 9th, the plaintiff visited Dr. Rand who made an examination and found a sinus of about the same size as that described by the defendant, and treated it in the same manner. As the sinus did not disappear upon treatment, on November 28th Dr. Rand performed an operation which consisted in excising the tract. As the condition did not heal after this operation, on April 22d, 1932, he performed a second operation, at which time he discovered a very small opening into the rectum constituting a true fistula. After the second operation, the fistula was healed and the plaintiff recovered rapidly.

There is no basis in the evidence for the claim that the method of treatment pursued by the defendant of this sinus was otherwise than proper and orthodox. The claim of the plaintiff, in brief, is that when the defendant was informed by her after she left the hos-

pital that she was suffering pain and a discharge from the sutured wound, the defendant was negligent in not calling upon her and observing her condition more promptly, and that because of his neglect to treat her more promptly, the sinus developed into a fistula necessitating the two operations which were later performed. "One who holds himself out as a specialist in the treatment of a certain organ, injury or disease, is bound to bring to the aid of one employing him, that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to that particular organ, injury or disease—its diagnosis and its treatment—in the same general locality, having regard to the state of scientific knowledge at the time. . . . The duty of exercising this degree of skill attached to this defendant at the time of his employment and is the measure of his responsibility in the diagnosis of the case to determine the nature and condition of the injury, as well as the proper treatment to be applied. . . . He is not to be judged by the result, nor is he to be held liable for an error of judgment. His negligence is to be determined by reference to the pertinent facts existing at the time of his examination and treatment, of which he knew, or, in the exercise of due care, should have known. It may consist in the failure to apply the proper remedy upon a correct determination of existing physical conditions, or it may precede that and result from a failure properly to inform himself of these conditions. If the latter, then it must appear that he had a reasonable opportunity for examination and that the true physical conditions were so apparent that they could have been ascertained by the exercise of the required degree of care and skill. For, if a determination of these physical facts resolves itself into a question of judgment merely, he cannot be held liable for his error." *Rann*

v. *Twitchell,* 82 Vt. 79, 83, 71 Atl. 1045, 20 L. R. A. (N. S.) 1030, 1032; *Slimak* v. *Foster,* 106 Conn. 366, 368, 138 Atl. 153. The evidence in the record upon this point is conflicting, but there was evidence before the jury which, if believed, would support the finding that the defendant failed to use proper care in not seeing the plaintiff more promptly after being informed by her of her condition after she returned from the hospital, provided the jury believed that she did so inform him.

Even if it be conceded that the defendant should have treated her more promptly, the further question presents itself as to whether or not his failure to do so caused any injury to her. The medical testimony in the case is uncontradicted, that due care and skill in the treatment of such a condition as reported by the plaintiff to the defendant required treatment by irrigation and cauterizing in the hope that the condition would clear up without surgical interference. Whether such treatment, if more promptly applied, would have affected the result is not shown by the testimony. Dr. Rand, the surgeon who performed the two subsequent operations and a witness called by the plaintiff, said that a sinus "sometimes" heals up with office treatment by irrigation and cauterization. Again he said that a sinus at its inception "sometimes" is cured by irrigation and cauterization; the earlier treatment is begun, the better. And in another place, he stated that a sinus may be cured without surgical treatment but a fistula rarely. Dr. Speir, an expert witness called by the plaintiff, testified that no one can say that irrigation by antiseptics would have cleared up this condition. He was of the opinion that a "sinus can be better treated at an early stage than at an advanced stage," but that no one can tell whether the use of washes and hypodermic syringes and silver nitrate

would have cleared up the plaintiff's condition. The fistula was first discovered by Dr. Rand at the time of the second operation by him. It is uncertain in the testimony how long it had existed or how soon before it might have been discovered. Nor is there any basis in the testimony from which it could be determined how long the sinus had existed before being observed by the defendant on October 9th.

The proper treatment of a condition such as claimed by the plaintiff and the probability of effecting a cure by various methods present questions requiring the special experience of expert witnesses. It is a field requiring special skill and learning wherein it is not permissible for laymen as nonexperts to set up any artificial standards as to methods of treatment or probability of cure. The duty rested upon the plaintiff to produce testimony before the jury to the effect that the earlier treatment of the case with reasonable probability would have aided the patient. As the testimony goes no further than to state that earlier treatment might have been beneficial, the jury were left purely to speculation as to whether the conduct of the defendant was a cause of the plaintiff's subsequent condition; and, under the circumstances, the court did not err in setting aside the verdict. *Bates* v. *Carroll,* 99 Conn. 677, 679, 122 Atl. 562; *Slimak* v. *Foster, supra,* 366, 368; *Quackenbush* v. *Vallario,* 114 Conn. 652, 657, 159 Atl. 893; *Capolupo* v. *Wills,* 116 Conn. 13, 17, 163 Atl. 454; *Witkowski* v. *Goldberg,* 115 Conn. 693, 696, 163 Atl. 413; 4 Wigmore, Evidence (2d Ed.) § 2090.

There is no error.

In this opinion the other judges concurred.