NORMAN GRODY, INDIVIDUALLY AND AS ADMINISTRATOR (ESTATE OF KAREN GRODY) *v.* GEORGE A. TULIN ET AL.

HOUSE, C. J., BOGDANSKI, LONGO, BARBER and MACDONALD, JS.

Argued November 12, 1975—decision released March 30, 1976

*Joel M. Ellis,* with whom were *Mark C. Yellin* and, on the brief, *William J. Friedeberg,* for the appellant (named plaintiff).

*John J. Reid,* with whom, on the brief, was *George Muir,* for the appellee (named defendant).

*Robert L. Trowbridge,* with whom was *James T. Healey,* for the appellee (defendant Morton H. Silberstein).

*Louis B. Blumenfeld,* with whom, on the brief, was *John F. Scully,* for the appellees (defendants Marjorie Rogowski and Abraham Ullman, coexecutors (estate of Bernard Rogowski).

MacDonald, J.   This appeal from a judgment rendered in favor of three defendant doctors in a wrongful death action based upon medical malpractice arose from the death of the plaintiff's decedent, Karen Grody, a married woman twenty-seven years old, who died fifteen days after an operation had revealed for the first time that she suffered from glioblastoma multiforme, a highly malignant tumor. During the three years preceding her death, she had suffered from a variety of pains, but none of the several doctors previously consulted had given any medical explanation for her complaints beyond suggestions that she had a hysterical personality and that her physical complaints were caused by emotional rather than physical problems.   In his wrongful death action, the plaintiff sought damages from two defendant doctors and the estate of a third doctor for their alleged negligence in failing to

diagnose Karen Grody's fatal spinal cancer, thus causing her needless suffering and premature death.[1]

After a lengthy trial to the jury, the trial court directed a verdict for the defendants and thereafter denied the plaintiff's motion to set aside the directed verdict. Several of the original assignments of error have not been pursued in this appeal, as specifically stated by the plaintiff, leaving for our consideration six claims of error on the part of the court in rejecting certain testimony of doctors with respect to the recognized medical standard prevailing in the community, three claims of error in failing to correct the finding as requested in the plaintiff's "Motion to Correct the Finding or for Rectification of Appeal," and one claim of error which primarily concerns us, in denying the plaintiff's motion to set aside the verdict on the several grounds that (a) error was committed in rulings on evidence; (b) error was made in directing the verdict; (c) error was made in the charge to the jury, and the verdict was (d) contrary to law and (e) against the evidence.

The basic facts which gave rise to the plaintiff's action in medical malpractice against two doctors, George A. Tulin and Morton H. Silberstein, and the

[1] The plaintiff, Norman Grody, originally brought this action, individually and as administrator of the estate of his deceased wife, in six counts against the three doctors and the Hospital of St. Raphael. In counts 1, 3 and 6, as administrator, he sued the three doctors for negligently failing to diagnose Mrs. Grody's fatal spinal cancer thus causing her needless suffering and premature death; in counts 2 and 4, individually, he sued Drs. George A. Tulin and Morton H. Silberstein on a theory of alienation of affections as a result of the psychiatric advice they gave his wife; and in count 5, as administrator, he sued the Hospital of St. Raphael for negligence in connection with Mrs. Grody's stay at that hospital. This appeal is being pursued only with respect to counts 1, 3 and 6.

executors of the estate of Dr. Bernard Rogowski, who died subsequent to the acts complained of, are not in dispute and, insofar as necessary for our determination of the issue which we consider dispositive of this appeal, may be summarized as follows:

The plaintiff's decedent, Karen Grody, a married woman twenty-seven years old, suffered from a variety of physical pains for which there seemed to be no medical explanation. William B. Scoville of Hartford, a neurosurgeon, examined her on October 8, 1965, and, being unable to determine if her various ailments were caused by organic malfunction, concluded that her physical distress might be due to a psychosomatic or emotional problem and referred her to the defendant, Dr. George A. Tulin, a psychiatrist who practiced in Hartford. After first seeing Mrs. Grody on January 6, 1966, and after examining Dr. Scoville's report of October 8, 1965, Dr. Tulin diagnosed her as having a hysterical personality and as having physical complaints which were caused by emotional rather than physical problems. He treated Mrs. Grody psychiatrically until November 4, 1966, at which time she moved to New Haven and Dr. Tulin referred her to the defendant, Dr. Morton H. Silberstein, a psychiatrist practicing in New Haven who, on November 25, 1966, admitted her to the Hospital of St. Raphael in New Haven as a psychiatric patient with a diagnosis similar to that of Dr. Tulin of hysterical personality. The following day he called in Dr. Bernard Rogowski, a staff neurologist and also a psychiatrist, who examined Mrs. Grody on November 26, 1966, and reported to Dr. Silberstein that he found her to be "immobile except head and speech," found "no organic tokens" and recom-

mended that a report be obtained from Dr. Tulin as "a basis for procedures." Mrs. Grody's paralysis continued after November 26, 1966, during her stay at the Hospital of St. Raphael, and on December 3, 1966, at her family's request, she was transferred by ambulance to St. Francis Hospital in Hartford, where she was admitted by Dr. William J. Doerr, a psychiatrist, who gave her a physical examination and thereafter sought a consultation with Dr. Joseph S. Sadowski, a neurosurgeon, who gave Mrs. Grody a myelogram of the spine which disclosed evidence of a spinal tumor. An operation performed by Dr. Sadowski on December 6, 1966, disclosed a tumor found to be glioblastoma multiforme, a highly malignant cancer. Mrs. Grody died from the cancer fifteen days later on December 21, 1966.

In order to reduce this seemingly complicated case to a comparatively simple presentation of what we consider to be the one basic and dispositive issue, it is important to bear in mind that it arises out of a wrongful death action brought pursuant to the provisions of § 52-555 of the General Statutes for damages "for injuries resulting in death." This was clearly stated by the plaintiff's counsel in response to questioning by the court at the outset of the trial and as conceded in the plaintiff's brief: "It is true that the claimed negligence must be a legal cause of Karen Grody's death in order for there to be a recovery." The plaintiff made no claim to the trial court that the action was brought under any other authority, such as § 52-599 of the General Statutes, our "Survival of Actions" statute. "A party cannot present a case to the trial court on one theory and then ask a reversal in the supreme court on another." Maltbie, Conn. App. Proc.

§ 305; *Arcari* v. *Dellaripa,* 164 Conn. 532, 537, 325 A.2d 280; and a party is not entitled to raise issues on appeal which have not been raised in the trial court. *Zeller* v. *Kugell,* 145 Conn. 729, 730, 141 A.2d 240.

The elements of a cause of action in malpractice for a wrongful death are clear from the explicit language of the statute,[2] which as a statute in derogation of the common law is limited to matters clearly within its scope. *Willoughby* v. *New Haven,* 123 Conn. 446, 454, 197 A. 85. The plaintiff must prove not only a violation of a standard of care as a wrongful act, but also a causal relationship between the injury and the resulting death. "A causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case." *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 153 Conn. 19, 22, 213 A.2d 449. The malpractice alleged here must be the cause of Karen Grody's death and not a mere incident in a chain of events. "If the chain of causation of the damage, when traced from the beginning to the end, includes an act or omission which, even if wrongful or negligent, is or becomes of no consequence in the results or so

---

[2] "[General Statutes] Sec. 52-555. ACTIONS FOR INJURIES RESULTING IN DEATH. In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of."

trivial as to be a mere incident of the operating cause, it is not such a factor as will impose liability for those results." *Connellman* v. *Coffey,* 122 Conn. 136, 142, 187 A. 901.; *Mahoney* v. *Beatman,* 110 Conn. 184, 197, 147 A. 762. Moreover, evidence showing an act of malpractice to be the cause of death "would have to be introduced through an expert witness." *Ardoline* v. *Keegan,* 140 Conn. 552, 558, 102 A.2d 352.

The state of Connecticut tumor record indicates that the cause of Karen Grody's death was a malignant astrocytoma spinal cord. Whatever evidence the plaintiff introduced that might be considered to have any bearing whatsoever on the question of causation came primarily from Joseph S. Sadowski, the neurosurgeon who operated on the plaintiff's decedent on December 6, 1966, at which time he found that a large cancerous tumor had replaced 75 percent of the spinal cord; that Mrs. Grody died fifteen days after the operation; that the disease from which she suffered, glioblastoma multiforme, due to a tumor which had been in existence at least since March of 1965, was bound to end in her death and the life expectancy of a person suffering from this disease is twelve months; that the exact time that a complete physical examination would have disclosed the symptoms indicating a tumor in her spine was when Karen Grody became paralyzed; and that, once she became paralyzed, no type of operation could have saved her life. Dr. Sadowski further testified that it is impossible to perform a biopsy before removal of a tumor in a situation such as this; that the disease which caused Karen Grody's death is a highly malignant tumor, meaning that it is cancer, and that it is not a surgically treated disease.

Although not denying that the immediate cause of Karen Grody's death was a spinal cancer, the plaintiff argues that if the operation had been performed at any time while she was under the care of the three defendant doctors, her life would have been prolonged and that, therefore, their negligence resulted in a shortening of her life span. The evidence fails, however, to remove that theory from the realm of pure speculation, as Dr. Sadowski's exact words clearly indicate that it is only "in the realm of possibility."[3] When dealing with death admittedly directly caused by cancer the jury cannot speculate on other causes that *might* have contributed to such death. In a case involving a death from cancer following an injury received in an automobile accident, this court stated: "From the evidence before them we do not think the jury could reasonably have inferred that the cancer was caused by the injury to the left side in this accident. It was an inference which could only be made by expert medical authority, or by the jury in reliance upon medical opinion. The physician's testimony before the jury in the instant case excluded any such inference. Neither by the direct opinion of a physician, nor by his deduction by the process of

---

[3] In answer to questions by plaintiff's counsel with respect to Karen Grody's admission to St. Francis Hospital on November 25, 1966, Dr. Sadowski testified as follows:

"Q. . . . Now you testified that a further investigation, tests should be made, and that with the discovery with these other tests of the tumor, she could be operated on, and this would have prolonged her life, did you not?

A. I didn't say that exactly.

Q. Well, what did you say?

A. I said it might have.

Q. Well, in your opinion, is it reasonably probable that it would?

A. No . . .

Q. It might have at this time, right?

A. This is in the realm of possibility, yes, sir."

eliminating other causes than traumatic agency, nor by his opinion based upon a hypothetical question, did the plaintiff place before the jury the only basis from which they could have reasonably reached such a conclusion. Without such expert evidence, the opinion of the layman upon a subject such as the determination of the cause of a cancer in a given case is mere speculation or conjecture. These cannot support causal connection; that must rest upon the proven facts. The plaintiff failed to sustain the burden of making such causal connection and furnished the jury no logical basis for making the inference they drew." *Bates* v. *Carroll,* 99 Conn. 677, 679, 122 A. 562.

Here, the jury would have been called upon to speculate, not as to the cause of the cancer, as in *Bates,* but as to whether an earlier diagnosis and treatment of the cancer might have prolonged Karen Grody's life. "The duty rested upon the plaintiff to produce testimony before the jury to the effect that the earlier treatment of the case with reasonable probability would have aided the patient. As the testimony goes no further than to state that earlier treatment might have been beneficial, the jury were left purely to speculation as to whether the conduct of the defendant was a cause of the plaintiff's subsequent condition; and, under the circumstances, the court did not err in setting aside the [plaintiff's] verdict." *Green* v. *Stone,* 119 Conn. 300, 306, 176 A. 123.

Aside from claimed error in denying the plaintiff's motion to set the verdict aside and in directing a defendant's verdict in the first place, the only other claim of error which we need to consider as bearing on the subject of causal connection has to

do with the failure of the court to correct the finding as requested in the plaintiff's "Motion to Correct the Finding or for Rectification of Appeal" by adding the words: "Before she [Mrs. Grody] became completely paralyzed, based on reasonable medical probability, an operation to remove the tumor would have prolonged her life," referring to the transcript. The evidence does not support this claim, which is based solely upon Dr. Sadowski's reply to the following question by the plaintiff's counsel: "Now, before she became completely paralyzed, in your opinion, based upon reasonable probability, would an operation to remove the tumor have prolonged her life?" The witness replied, "I would think so," but completely and clearly destroyed any value of this answer as an opinion by the further statements made when the plaintiff's counsel sought to clarify and enlarge upon this answer, as set forth in footnote 3.

In view of our disposition of the foregoing issues pertaining to the question of causal connection between any acts or omissions on the part of any of the three doctors involved and the death of Karen Grody, it is not necessary for us to consider the remaining claims of error, which pertain solely to the required standards of care.

There is no error.

In this opinion HOUSE, C. J., LONGO and BARBER, Js., concurred.

BOGDANSKI, J. (dissenting in part). Litigants have a constitutional right to have issues of fact determined by a jury. Conn. Const., art. I § 19, amend. IV; *Spencer* v. *Good Earth Restaurant Corporation,* 164 Conn. 194, 198, 319 A.2d 403; *Blados*

v. *Blados,* 151 Conn. 391, 396, 198 A.2d 213. Directed verdicts are therefore disfavored, and should be granted only if on the evidence the jury could not reasonably and legally reach any conclusion other than that embodied in the verdict as directed. *Johnson* v. *Newell,* 160 Conn. 269, 279, 278 A.2d 776; *Loukides* v. *United Illuminating Co.,* 160 Conn. 66, 68, 273 A.2d 719. "If the evidence presented is in conflict, and more than one conclusion is reasonably open to the jury, particularly when it consists of oral testimony, [and] if the jury may reasonably draw different inferences from the evidence, . . . a verdict should not ordinarily be directed by the court. *Terminal Taxi Co.* v. *Flynn,* 156 Conn. 313, 317, 240 A.2d 881; *Wood* v. *Wood,* 135 Conn. 280, 285, 63 A.2d 586; 53 Am. Jur., Trial, § 332. Every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence considered on a whole should be entertained by the trial court and those facts should be assumed as true which the jury may properly find from the evidence." *Loukides* v. *United Illuminating Co.,* supra, 70.

It is elementary that the jury, and not the court, are the judges of the credibility of the testimony of a witness and the weight to be accorded to that testimony, and this is true whether there is a contradiction between different witnesses or in the testimony of a single witness. *Giambartolomei* v. *Rocky DeCarlo & Sons, Inc.,* 143 Conn. 468, 473, 123 A.2d 760; *Zullo* v. *Zullo,* 138 Conn. 712, 715, 89 A.2d 216; *Stitham* v. *LeWare,* 134 Conn. 681, 683, 60 A.2d 658. "The trier of fact may disbelieve all or any part of the testimony of a party or witness if it is tainted with evasiveness, uncertainty, or contradictions, or may believe only such portion as

seems credible in the light of other evidence." 30 Am. Jur. 2d, Evidence, § 1082, p. 230; see *Rickert* v. *Fraser,* 152 Conn. 678, 681, 211 A.2d 702.

In the present case, the plaintiff had the burden of producing testimony to the effect that an earlier diagnosis and treatment of the decedent's disease might have prolonged her life. The plaintiff met that burden when his counsel asked Dr. Sadowski, "Now, before she became completely paralyzed, in your opinion, *based upon reasonable probability,* would an operation to remove the tumor have prolonged her life?" and Dr. Sadowski replied, "I would think so." (Emphasis supplied.) It is true that shortly thereafter the plaintiff's counsel asked Dr. Sadowski: "Now, doctor, the evidence shows, the hospital record shows that on the 25th of November, 1966, at three o'clock in the afternoon, she walked into the hospital, that during the night— rather the morning of November 26th, on the three a.m. to seven a.m. shift, she explained to the nurses that she was becoming paralyzed. Now you testified that a further investigation, tests should be made, and that with the discovery with these other tests of the tumor, she could be operated on, and this would have prolonged her life, did you not?" Dr. Sadowski replied, "I said it might have," and "This is in the realm of possibility, yes, sir." The majority have concluded that these latter statements "completely and clearly destroyed any value of" the former testimony of the doctor.

I do not agree. It is an impermissible invasion of the province of the jury for the court to decide questions of fact. Therefore, in the absence of an outright retraction of prior testimony, it is not permissible for an appellate court to decide that

the "value" of testimony was "destroyed" by later testimony. That determination is for the trier of fact. The only proper inquiry for a court is whether there was *any* evidence on the issue to be submitted to the jury.

The jury could have reasonably understood Dr. Sadowski's latter testimony as simply a modification of the former testimony, referring to a different time period: the first testimony referring to the time before complete paralysis set in, and the second referring to November 25 and 26, 1966, when the paralysis had begun to develop. Thus, although the direction of verdicts in favor of Drs. Rogowski and Silberstein would not be improper since they did not treat the decedent until after paralysis began to set in, the weight and sufficiency of the testimony and the reasonable inferences to be drawn therefrom as to causation in respect to Dr. Tulin would be for the jury's determination. I would, therefore, set aside the directed verdict as to Dr. Tulin and remand the case for further proceedings in accordance with the law.