[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PLAINTIFFS' MOTION FOR ARTICULATION
CT Page 4864
The plaintiffs, Kathryn and Fred Sinclair, have filed a motion for articulation, pursuant to Practice Book § 66-5, as to the court's ruling granting the defendant's, Quest Diagnostics, Inc., motion to strike the plaintiffs' complaint for failure to attach a good faith certificate pursuant to General Statutes § 52-190a. The plaintiffs request, in their motion, that the court articulate its ruling as it relates to two specific questions: "1) what unique medical issues are present in plaintiff's (sic) complaint which would require specialized knowledge from a medical expert; and 2) whether or not the Court found that the plaintiffs and the defendant maintained a consensual, physician/patient relationship."
Pursuant to the plaintiffs' motion, the court now offers the following articulation of its ruling.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted. . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Brackets in original; citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). However, where a complaint is within the ambit of General Statutes § 52-190a, the failure to provide a good faith certificate renders the complaint legally insufficient and subject to a motion to strike. See LeConchev. Elligers, 215 Conn. 701, 711, 579 A.2d 1 (1990); Yale UniversitySchool of Medicine v. McCarthy, 26 Conn. App. 497, 502, 602 A.2d 1040
(1992).
The defendant sought to strike the plaintiffs' complaint upon the ground that is was legally insufficient because the plaintiffs failed to provide a good faith certificate in accordance with General Statutes § 52-190a.[1] The defendant argued that "[i]t is clear from [the] allegation of negligent medical care that the plaintiffs are alleging claims of medical malpractice against Quest." In support of this contention, the defendant specifically argued that a claim for medical malpractice exists because "the plaintiffs allege that Quest was negligent in failing to timely report the results of her amniocentesis test and [in] failing to take reasonable precautions to protect Ms. Sinclair from injury or further medical procedure due to the alleged late reporting of her amniocentesis results. The plaintiffs further allege that Quest was negligent in failing to CT Page 4865 properly inspect its amniocentesis testing procedures."
In response, the plaintiffs argued that this was a case of ordinary negligence and no allegation of medical malpractice was present. Specifically, the plaintiffs argued that the "[p]laintiffs' complaint which sounds in ordinary negligence, primarily claims that defendant Quest failed to timely report the results of Ms. Sinclair's amniocentesis test which caused [the] plaintiff; inter alia, pain and suffering, emotional distress, and deprived her of her option to terminate her pregnancy. The issue before us is timing. . . ." The plaintiffs also argued that "[d]ue to the absence of a physician/patient relationship between plaintiff Sinclair and defendant Quest, a claim for medical malpractice does not exist."
The court agreed with the defendant that a good faith certificate was needed and ordered the complaint stricken, reserving the plaintiffs' right to amend the complaint and file a certificate of good faith within fifteen days pursuant to Practice Book § 10-44.
The court acknowledges that a split exists among the judges of the Superior Court as to whether a good faith certificate is required in all actions against a health care provider alleging negligent care or treatment. For example, in Pascarelli v. Corning ClinicalLaboratories, Superior Court, judicial district of Danbury at Danbury, Docket No. 325312 (March 25, 1997, Moraghan, J.) (19 Conn. L. Rptr. 82) and Sloan v. St. Francis Hospital Medical Center,
Superior Court, judicial district of New London at New London, Docket No. 536439 (November 27, 1996, Hendel, J.), the court held that a certificate of good faith was not necessary because expert testimony was not required in order for the plaintiff to establish the standard of care. However, in Schatz v. New Haven Orthopedic Surgeons,
Superior Court, judicial district of New Haven at New Haven, Docket No. 415689 (April 8, 1999, Levin, J.), and Rodrigues v. Steremberg,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 331335 (November 26, 1996, Melville, J.), relying upon the language of General Statutes § 52-190a, the court held that any civil action to recover damages resulting from personal injury or death in which the plaintiff alleges negligence in the care or treatment of a health care provider must be accompanied by a certificate of good faith.
However, this court is not required to decide whether a good faith certificate is required in all claims of negligence against a health care provider because the allegations in the present case do, in fact, sound in medical malpractice and require expert testimony in order to establish the standard of care. CT Page 4866
The plaintiffs allege both throughout their complaint and in their brief in opposition to the motion to strike that this case presents an issue of timing. The plaintiffs are correct in asserting that timing, or more accurately stated, untimely reporting, is, indeed, a very important issue to this case.
The plaintiffs specifically allege in Count One, ¶ 10, of their complaint that it was the defendant's negligence in late reporting that forced the plaintiff; Ms. Sinclair, to undergo further medical procedures resulting in pain, suffering and an increased risk to her and her unborn fetus. Count One, ¶ 11, alleges, inter alia, that the defendant failed to timely report the results of the plaintiff's amniocentesis and that the defendant withheld those results beyond an acceptable period of time. Count One, ¶ 11, also alleges that the defendant failed to have their testing procedures inspected with sufficient frequency and care, and it failed to maintain, adopt and enforce safety rules that would prevent late reporting of test results. Several other paragraphs of Count One also allege and make reference to the defendant's late reporting.
Count Two of the plaintiffs' complaint alleges, in part, that the defendant failed to timely perform its obligation pursuant to their contract, thereby causing damages and mental anguish to Ms. Sinclair and denying her the ability to terminate her pregnancy because of the delay. Counts Three, Four, Five and Six, by incorporating ¶¶ one through sixteen of Count One need not be addressed. Finally, Counts Seven and Eight allege, inter alia, that the defendant's late reporting caused the plaintiff; Mr. Sinclair, to suffer damages.
The facts of the plaintiffs' complaint allege that Ms. Sinclair underwent an amniocentesis test on or about December 17, 1997, and the sample obtained was forwarded to the defendant for analysis. On or about December 30, 1997, the plaintiff; Ms. Sinclair, as well as her doctor, telephoned the defendant to inquire into the results of the test. The complaint also alleges that the defendant stated that the test had not yet been performed. However, the next day, December 31, 1997, Ms. Sinclair's physician received a copy of those results via facsimile. As previously outlined, each count of the plaintiffs' complaint centers around this alleged late reporting.
Expert testimony is required in medical malpractice cases because "the lay person, including the members of the jury and the presiding judge, [do] not and can not have the requisite knowledge as to whether proper treatment was given, proper procedure was followed, or CT Page 4867 proper care was used." Fitzmaurice v. Flynn, 167 Conn. 609, 617,356 A.2d 887 (1975); see also Shegog v. Zabrecky, 36 Conn. App. 737,745-46, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670
(1995). In the present case, there are approximately fourteen days between the date Ms. Sinclair's physician performed her amniocentesis and the date the defendant forwarded the results back to the physician. Expert testimony will be required in order to determine whether such a time frame is within the normal standard of care and what, if any, risks were involved by this alleged delay in reporting the results of Ms. Sinclair's amniocentesis. Further, the risks involved in undergoing an additional test will need medical testimony. Whether the defendant's testing procedures were sufficiently inspected will require expert testimony. In addition, the adequacy of the defendant's safety rules also presents an issue for expert testimony.[2]
Accordingly, each count of the plaintiffs' complaint requires, at a minimum, expert medical testimony related, in one form or another, to the issue of timing in order to establish the standard of care.
The plaintiffs argued that the defendant's motion to strike should also be denied because there was no consensual physician/patient relationship between them and such a relationship is necessary in a medical malpractice case. The plaintiffs' motion for articulation requests that the court clarify its finding on this issue as well.
General Statutes § 52-190a specifically states that "[n]o civil action shall be filed to recover damages resulting from personal injury . . . in which it is alleged that such injury . . . resulted from the negligence of a health care provider. . . ." Although §52-190a does not define the term "health care provider," it does refer to a "similar health care provider as defined in section52-184c." See General Statutes § 52-190a. General Statutes § 52-184c
refers to the definition of "health care provider" as it is defined in § 52-184b.
In § 52-184b, the term "health care provider" is defined as "any person, corporation, facility or institution licensed by this state to provide health care or professional services, or an officer, employee or agent thereof acting in the course and scope of his employment." (Emphasis added.) See also Smith v. Mediplex ofWestport, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 0159274 (March 25, 1998, D'Andrea, J.) (rehabilitation facility is a health care provider); Pascarelli v.Coming Clinical Laboratories, Inc., supra, Superior Court, Docket No. CT Page 4868 325312 (blood testing laboratory is a health care provider); Rumbinv. Baez, Superior Court, judicial district of New Haven at New Haven, Docket No. 378968 (December 8, 1997, O'Keefe, J.) aff'd52 Conn. App. 487, 727 A.2d 744 (1999) (licensed psychologist is a health care provider); Shaw v. Caldor, Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 135645 (February 23, 1995, Lewis J.) (13 Conn.L.Rptr. 524) (pharmacy and pharmacist are health care providers). The defendant, here, is a licensed clinical laboratory, organized under the laws of Connecticut. (See Complaint, Count 1, ¶ 2 and Count 6, ¶ 17.) In accordance with the above cited cases, the defendant fits within the broad definition of "health care provider" pursuant to General Statutes § 52-190a.
The court also found that a consensual physician/patients relationship existed between the plaintiffs and the defendant. "The physician/patient relationship is consensual. . . . It arises where an individual seeks and obtains medical treatment or advice from ahealth care professional." (Citation omitted; emphasis added.)Williams v. National Railroad Passenger Corp., 16 F. Sup.2d 178, 181
(D. Conn. 1998), citing Pokorny v. Shafer, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 528375 (February 28, 1994, Wagner, J.). The plaintiffs argue that they did not choose the defendant laboratory, nor was it used for their benefit. (See plaintiffs' Brief, p. 6.) Yet, despite this argument, the plaintiffs, themselves, specifically allege that there existed a contractual relationship with the defendant. (See Complaint, Count 2.)
Although the plaintiffs did not specifically choose the exact laboratory to conduct the analysis of the amniocentesis test, they did choose to have the testing performed and analyzed, and as such, their relationship with the defendant was consensual and for their benefit. The analysis of this test was not performed for the benefit of the physician as the plaintiffs claim, for what benefit would the physician derive from the results of such a test? Obviously, the test was performed and the analysis sought for the benefit of the plaintiffs. Accordingly, the facts of this case are distinguishable from the facts of the cases relied upon by the plaintiffs. See generally Williams v. National Railroad Passenger Corp., supra,16 F. Sup.2d 181 (no consensual physician/patient relationship existed between plaintiff and co-defendant where plaintiff's employer compelled employee to provide urine sample to the co-defendant for the purposes of an employer-required drug test); Pokorny v. Shafer,
supra, Superior Court, Docket No. 528375 (no physician/patient relationship existed where an independent medical examination occurred and the plaintiff had not sought medical treatment, advice CT Page 4869 or professional services for purposes of medical treatment). The plaintiffs, here, sought the defendant's professional services precisely for the purpose of medical treatment. This is not a case where the services of the defendant were for the benefit of a third-party employer, insurance company, or the like. These services where for the direct benefit of the plaintiffs.
Accordingly, the court found, in granting the defendant's motion to strike, that the relationship between the plaintiffs and the defendant was a consensual relationship between a patient and a health care provider where the health care provider was, allegedly, negligent. As such, a good faith certificate was required.
Accordingly, for the reasons articulated above, the court granted the defendant's motion to strike the complaint in its entirety for failure to attach a good faith certificate as required by General Statutes § 51-190a.
POTTER, J.