[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTIONS TO STRIKE
On September 21, 1998, Minerva Ramos Arroyo, the mother of the plaintiff, Mary Torres, suffered an acute asthma attack requiring emergency medical services. At 6:24 a.m. on that date, Arroyo, her family and/or friends, called 911 requesting emergency medical services for Arroyo at 35 Enfield Street in Hartford, Connecticut. A basic life support ambulance from American Medical Response (AMR) arrived at approximately 6:37 a.m.[1] The ambulance personnel determined that Arroyo had no respiration and pulse, and called for assistance from a paramedic unit from AMR. The paramedic unit arrived at 6:44 a.m., then transported Arroyo to St. Francis Hospital where she was subsequently pronounced dead. Torres, the executrix of Arroyo's estate, commenced this action on behalf of the estate and Beronica and Jose Cardona, her wards and the minor children of Arroyo, against the defendants, the city of Hartford (City) and AMP. on October 10, 2000. The sixteen-count complaint seeks damages connected with the death of Arroyo. Counts one and two allege negligence against AMR and the City, respectively. Counts three and four allege wanton and reckless misconduct against AMR and the City, respectively. Count five alleges gross negligence against the City. Counts six and eight allege loss of chance resulting from negligence, against AMR and the City, respectively. Counts seven and nine allege loss of chance resulting from wanton and reckless misconduct, against AMR and the City, respectively. Count ten alleges loss of chance resulting from gross negligence, against the City. Count eleven alleges that AMR's actions constitute a violation of the Connecticut Unfair Trade Practices Act (CUTPA). Counts twelve and thirteen assert claims for bystander emotional distress on behalf of Beronica Cardona and Jose Cardona, based on the negligence of AMR and the City, respectively. Counts fourteen and fifteen assert claims for bystander emotional distress on behalf of Beronica and Jose based on the alleged wanton and reckless misconduct of AMR and the City, respectively. Finally, count sixteen asserts a claim for bystander emotional distress on behalf of Beronica and Jose based on the alleged gross negligence of the City.
The defendants each have filed a motion to strike. AMR moves to strike the first and sixth counts of the complaint on the ground that the plaintiff has failed to file a good faith certificate at the commencement of the lawsuit, the third and seventh counts of the complaint on the ground that those counts fail to allege sufficient facts to constitute a CT Page 12856 cause of action sounding in recklessness, the eleventh count of the complaint on the ground that the plaintiff has failed to file a copy of the complaint with either the Attorney General or the Department of Consumer Protection, as required by CUTPA, and on the ground that the plaintiff has failed to allege sufficient facts to sustain a cause of action for a violation of CUTPA, and counts twelve and fourteen on the ground that there is no cause of action for bystander emotional distress in medical malpractice cases in Connecticut. The City moves to strike the second, fourth, fifth, eighth, ninth and tenth counts on the ground that the wrongful death statute is the sole basis of recovery in an action that includes as an element of damages a person's death or its consequences, counts five, ten and sixteen on the ground that Connecticut does not recognize a cause of action for gross negligence,[2] and the fourth, ninth and fifteenth counts of the complaint on the ground that the plaintiff has failed to satisfy the heightened standard for pleading a recklessness claim.
 I
The purpose of a motion to strike is to "challenge the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996). In determining the sufficiency of a complaint, "all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.) Doe v. Yale University, 252 Conn. 641, 667, 748 A.2d 834
(2000). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted.) Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089
(1998).
 II A General Statutes § 52-190a
AMR moves to strike the first and sixth counts of the complaint on the ground that the plaintiff has failed to file a good faith certificate at the commencement of the lawsuit. General Statutes § 52-190a (a) provides that "[n]o civil action shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after CT Page 12857 October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant."
"The absence from the complaint of the statutorily required good faith certificate renders the complaint subject to [a] motion to strike pursuant to Practice Book [§ 10-39] for failure to state a claim upon which relief can be granted." LeConche v. Elligers, 215 Conn. 701, 711,579 A.2d 1 (1990). Section 52-190a applies, however, only if two conditions are met. First, the defendant must be a health care provider within the meaning of General Statutes § 52-184b. Bruttomesso v.Northeastern Connecticut Sexual Assault Crisis Services, Inc., 242 Conn. 1,8-9, 698 A.2d 795 (1997) (holding that because § 52-190a references General Statutes § 52-184c, which incorporates the definition of health care provider under § 52-184b, that definition applies to § 52-190a). Second, § 52-190a applies only to actions sounding in medical malpractice, not those sounding in ordinary negligence.[3]
Section 52-184b (a) defines a health care provider as "any person, corporation, facility or institution licensed by this state to provide health care or professional services, or an officer, employee or agent thereof acting in the course and scope of his employment." The Superior Court has interpreted this definition broadly. See Sinclair v. QuestDiagnostics, Inc., Superior Court, judicial district of Windham at Putnam, Docket No. 062320 (April 25, 2000, Potter, J.) (27 Conn. L. Rptr. 98, 100) (finding a diagnostic testing clinic falls "within the broad definition of "health care provider' . . ."); Pascarelli v.Corning Clinical Laboratories, Inc., Superior Court, judicial district of Danbury, Docket No. 325312 (March 25, 1997, Moraghan, J.) (19 Conn. L. Rptr. 82, 83) (holding that under "the broad language of the statute" a blood testing laboratory is a health care provider). See also Smith v. Mediplex of Westport, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 159274 (March 25, 1998, D'Andrea, J.) (21 Conn. L. Rptr. 495) (finding a rehabilitation facility to be a health care provider); Rumbin v.Baez, Superior Court, judicial district of New Haven at New Haven, Docket No. 378968 (December 8, 1997, O'Keefe, J.), aff'd,52 Conn. App. 487, 727 A.2d 744 (1999) (holding that a licensed psychologist is a health care provider); Shaw v. Caldor,Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 135645 (February 23, 1995, Lewis J.) (13 Conn. L. Rptr. 524) (holding that a pharmacy and pharmacist are health care providers under the statute). CT Page 12858
Under this broad interpretation of § 52-184b (a), AMR clearly falls within the definition of "health care provider" under § 52-184b (a). The plaintiff, in fact, describes AMR as a corporation . . . engaged in the business of providing health care and/or professional emergency medical care and transportation to emergency medical facilities." (Emphasis added.) (Complaint, Count One, ¶ 2.)
Even if the defendant is a health care provider, § 52-190a applies only if the plaintiff's action sounds in medical malpractice, not in ordinary negligence.[4] "[P]rofessional negligence or malpractice . . . [is] defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Internal quotation marks omitted.)Santopietro v. New Haven, 239 Conn. 207, 226, 682 A.2d 106 (1996). In determining whether a plaintiff's claim sounds in medical malpractice, and not merely in ordinary negligence, the Superior Court has looked to whether the case presents "uniquely medical issues requiring expert testimony to establish the standard of care. . . ." (Citations omitted; internal quotation marks omitted.) Leister v. Thimineur, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 070828 (Dec. 4, 2000, Nadeau, J.); see also Triano v. Fitzpatrick, M.D., Superior Court, judicial district of New Britain, Docket No. 494828 (February 17, 2000, Graham, J.) (26 Conn. L. Rptr. 454, 456); DeJesus v. VeteransMemorial Medical Center, Superior Court, judicial district of New Britain, Docket No. 498385 (Oct. 19, 2000, Kocay, J.) The plaintiff claims, inter alia, that AMR "failed to follow appropriate medical protocols in delivering emergency medical care." (Complaint, Count One, ¶ 12(1).) The determination of what constitutes appropriate medical protocols in the treatment of an acute asthma attack will require the testimony of a medical expert. Thus, the court holds that the plaintiff's action sounds in medical malpractice, not merely ordinary negligence. Therefore, since the plaintiff has not filed a good faith certificate as required by § 52-190a, the defendant AMR's motion to strike counts one and six is granted.[5]
 B Recklessness
Both defendants move to strike the recklessness counts on the ground that the plaintiff has failed to allege sufficient facts to constitute a cause of action sounding in recklessness. They claim that the recklessness counts reiterate the same facts alleged in the negligence CT Page 12859 counts merely adding the phrases, "wanton and reckless conduct" and "knowingly or with reckless disregard." On this ground, AMR moves to strike the third and seventh counts and the City moves to strike the fourth, ninth and fifteenth counts.[6]
"Recklessness is a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." (Citations omitted; internal quotation marks omitted.) Dubay v. Irish, 207 Conn. 518, 532, 542 A.2d 711 (1988). Reckless conduct is that which "tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." Id., 533, quoting W. Prosser W. Keeton, Torts (5th Ed.) § 34, p. 214. "One is guilty of reckless misconduct when `knowing or having reason to know of facts which would lead a reasonable [person] to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.'" Craig v. Driscoll,64 Conn. App. 699, 721, ___ A.2d ___ (2001), quoting Brock v. Waldron,127 Conn. 79, 84, 14 A.2d 713 (1940) and citing to 2 Restatement Torts, § 500.
"A cause of action claiming . . . reckless misconduct is "separate and distinct' from a cause of action alleging negligence." Belanger v.Village Pub I, Inc., 26 Conn. App. 509, 513, 603 A.2d 1173 (1992), quoting Kostiuk v. Queally, 159 Conn. 91, 94, 267 A.2d 452 (1970). "The mere use of the words `reckless' and `wanton' is insufficient to raise an actionable claim of reckless and wanton misconduct." Sheiman v. LafayetteBank Trust Co., 4 Conn. App. 39, 46, 492 A.2d 219 (1985). "A claim for wanton and reckless misconduct, which is unsupported by sufficient alleged facts . . . is a mere conclusion of law and is subject to a motion to strike." Conduah v. Herb Chambers, Inc., Superior Court, judicial district of Hartford, Docket No. 580919 (May 28, 1999, PeckJ.); Muckle v. Francis, Superior Court, judicial district of New London, Docket No. 518276 (August 13, 1992, Leuba, J.) (7 Conn. L. Rptr. 230, 231); but see Ouellette v. Hartford Ins. Co., Superior Court, judicial district of New Britain, Docket No. 496991 (April 12, 2000, Kocay, J.) ("[t]he fact that the recklessness count relies upon the same factual allegations as the negligence claim does not, in and of itself, provide CT Page 12860 [the defendant] with the basis for a motion to strike.")
In this case, even construing the facts most favorably to the plaintiff, the court must grant the defendants' motion to strike because the facts alleged in the recklessness and negligence counts are identical and essentially allege only negligence. The only difference between the negligence and recklessness counts is that the plaintiff adds the words "wanton" and "reckless" in the recklessness counts. Therefore, the plaintiff has not satisfied the heightened pleading standard for recklessness and the defendants' motions to strike counts three, four, seven, nine and fifteen on this ground are granted.
 C Wrongful Death and Loss of Chance
The City moves to strike the second (negligence), fourth (recklessness), fifth (gross negligence), eighth (loss of chance due to negligence), ninth (loss of chance due to recklessness) and tenth (loss of chance due to gross negligence) counts of the complaint on the ground that the wrongful death statute is the sole basis of recovery in an action that includes as an element of damages a person's death or its consequences. Since the motion to strike counts four, five and nine have already been granted on other grounds, the court confines the discussion below to counts two and eight.
 1
Preliminarily, the court notes that the plaintiff failed to cite to the wrongful death statute in the complaint. Practice Book § 10-3(a) requires that "when any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." "The requirement of Practice Book [§ 10-3 (a)] is directory, rather than mandatory."Devita v. Esposito, 13 Conn. App. 101, 104, 535 A.2d 364 (1987), cert. denied, 207 Conn. 807, 540 A.2d 375 (1988); see also Rowe v. Godou,12 Conn. App. 538, 543 (1987), rev'd on other grounds, 209 Conn. 273, 275
(1988); Durkin v. First Healthcare Corp., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 350622 (October 18, 1990, Freed, J.) (2 Conn. L. Rptr. 743) (finding that the failure to cite the wrongful death statute did not require the court to strike the claim.) "The rule does not expressly or implicitly invalidate a pleading for failure to comply." Rowe v. Godou, supra, 12 Conn. App. 544. It is clear, since the plaintiff has claimed death as damages in the complaint, that the plaintiff's intent is to assert a claim for wrongful death. Thus, the plaintiff's failure to plead specifically the wrongful CT Page 12861 death statute is not fatal to the plaintiff's claim.
"Death, at common law, is not a recoverable element of damage. . . . In other words, death and its direct consequences can constitute recoverable elements of damage only if, and to the extent that, they are made so by statute." (Citations omitted.) Foran v. Carangelo, 153 Conn. 356, 359,216 A.2d 638 (1966). Therefore, General Statutes § 52-555, the wrongful death statute, "is the sole basis upon which an action that includes as an element of damages a person's death or its consequences can be brought." Lynn v. Haybuster Manufacturing, Inc., 226 Conn. 282,295, 627 A.2d 1288 (1993).[7] "The statutory right of action belongs, in effect, to the decedent, and to the decedent alone, and damages are recoverable for the death . . . as for one of the consequences of the wrong inflicted upon the decedent. . . . [T]he cause of action . . . [authorized by the statute] is a continuance of that which the decedent could have asserted had [she] lived and to which death may be added as an element of damage." (Citations omitted; internal quotation marks omitted.) Gionfriddo v. Rent A Car Systems, Inc., 192 Conn. 280, 291,472 A.2d 306 (1984).
The Supreme Court has held that "[t]he elements of a cause of action . . . for a wrongful death are clear from the explicit language of the statute. . . . The plaintiff must prove not only a violation of a standard of care as a wrongful act, but also a causal relation between the injury and the resulting death." (Citations omitted.) Grody v.Tulin, 170 Conn. 443, 448, 365 A.2d 1076 (1976). Indeed, by recognizing that the "chain of causation" may include a negligent act or omission, the Grody court implicitly recognized that a claim based on the wrongful death statute may allege that the defendant's actions are negligent. Id. Clearly, however, the statute was intended to bar plaintiffs from seeking recovery for death as damages under the wrongful death statute in one count and under an alternative theory of liability in a separate count that relies on the same conduct. Any other result would defy the rule that death is not recoverable as damages at common law.[8]
Therefore, although the motion to strike count two is denied, should the plaintiff file a substitute complaint repleading one or more of the previously stricken counts, she should set forth her negligence claim seeking damages for the death of her decedent pursuant to the wrongful death statute.
 2
The Appellate Court has allowed a loss of chance count to stand in an action which brings a separate count seeking damages for wrongful death. See Borkowski v. Sacheti, 43 Conn. App. 294, 682 A.2d 1095, cert. CT Page 12862 denied, 239 Conn. 945, 686 A.2d 120 (1996) (plaintiff brought wrongful death action, claiming that the defendant's wrongful conduct constituted medical malpractice and negligence; in a separate count, the plaintiff sought recovery for loss of chance.) A loss of chance claim does not seek damages for death. Instead, in order to prevail on a claim for loss of chance, the plaintiff must show "(1) that he has in fact been deprived of a chance for successful treatment and (2) that the decreased chance for successful treatment more likely than not resulted from the defendant's negligence." Id., 310. Since the plaintiff has sufficiently set forth a claim for loss of a chance based on negligence, the City's motion to strike count eight is denied.
 D Bystander Emotional Distress
Both defendants move to strike the claims of Beronica and Jose Cardona for bystander emotional distress. Specifically, AMR moves to strike counts twelve and fourteen on the ground that there is no cause of action for bystander emotional distress in medical malpractice cases in Connecticut. The City moves to strike counts fifteen and sixteen on the ground that Connecticut does not recognize an independent claim for the grossly negligent or reckless infliction of bystander emotional distress. Because the court has already stricken counts fifteen and sixteen on other grounds, this section addresses only AMR's motion to strike count twelve (negligent infliction of bystander emotional distress) and count fourteen (wanton and reckless bystander emotional distress).[9]
In order to bring an action for bystander emotional distress, the plaintiff must show that: "(1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response." Clohessyv. Bachelor, 237 Conn. 31, 56, 675 A.2d 852 (1996). The Supreme Court, however, earlier held in Maloney v. Conroy, 208 Conn. 392, 545 A.2d 1059
(1988), that there is no cause of action for bystander emotional distress in Connecticut in the context of a medical malpractice case. Subsequently, the Superior Court has split on the issue of whetherMaloney is an exception to the Clohessy rule. The plaintiff, however, CT Page 12863 concedes that in the medical malpractice context, Maloney functions as a bar to claims for bystander emotional distress. Instead, they argue that their claim does not sound in medical malpractice. As the court has already found in part II A above, the plaintiff has, in fact, bring an action that sounds in medical malpractice. Therefore, AMR's motion to strike counts twelve and fourteen are granted.[10]
 E CUTPA
AMR moves to strike the eleventh count of the complaint on the following grounds: 1) a CUTPA action does not lie in an action predicated solely on negligence or malpractice; 2) the plaintiff has failed to file a copy of the complaint with either the Attorney General or the Department of Consumer Protection, as required by General Statutes §42-110g (c); and 3) the CUTPA claim is improperly joined to the plaintiff's claims for personal injury.
The court grants the defendant's motion to strike the plaintiff's CUTPA claim on the ground that a medical malpractice claim cannot also form the basis for a CUTPA violation. The Supreme Court addressed this issue inHaynes v. Yale-New Haven Hospital, 243 Conn. 17, 699 A.2d 964 (1997) (plaintiff's claim against the defendant hospital based on allegations of inadequate staffing and training of personnel is a claim of medical malpractice, not CUTPA). There, the court held that "the touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation. To hold otherwise would transform every claim for medical malpractice into a CUTPA claim." Id., 38. In this case, the plaintiff's CUTPA count claims that in its contract with the City to provide emergency medical services to the public, AMR "misrepresented the response times, the number of ambulances which would be available and the level of training, quality and staffing it would provide." (Complaint, Count Eleven, ¶ 12.) These allegations are substantially similar to those that the Supreme Court found to constitute a recast medical malpractice claim in Haynes. Therefore, the court holds that the plaintiff's CUTPA claim is legally insufficient. Accordingly, AMR's motion to strike count eleven is granted.[11]
 CONCLUSION
CT Page 12864
For the foregoing reasons, AMR's motion to strike counts one, three, six, seven, eleven, twelve and fourteen is granted. The City's motion to strike counts four, five, nine, ten, fifteen and sixteen is granted. The City's motion eight is denied.
Peck, J.